716 P.2d 1238

**John DOE and Jane Doe, for themselves and as natural guardians of Jenny Doe, Rachael Roe and Richard Roe, for themselves and as natural guardians of Ruby Roe, a minor, Jane Smith, for herself and as natural guardian of Sally Smith, a minor, Plaintiffs/Appellants/Cross-Respondents,**

v.

**Lawrence R. DURTSCHI, Defendant/Appellant/Cross-Respondent,**

and

**Joint School District No. 93, Bonneville and Bingham Counties, Idaho, Defendant/Respondent/Cross-Appellant.**

**Nos. 15223, 15224, 15225, 15277, 15278 and 15279.**

Supreme Court of Idaho.

Feb. 10, 1986.

Rehearing Denied April 23, 1986.

William P. Combo (argued), and John X. Combo (argued) of the firm Weinpel, Woolf, Just, Combo, and Davis, Idaho Falls, for plaintiffs/appellants/cross-respondents Doe and Smith.

Roger B. Wright (argued), and Kevin B. Homer (argued) of the firm Voshell & Wright, Idaho Falls, for defendant/appellant/cross-respondent Durtschi.

Reginald R. Reeves of the firm Denman & Reeves, Idaho Falls, for plaintiffs/appellants/cross-respondents Roe.

Dennis M. Olsen of the firm Petersen, Moss, Olsen, Meacham & Carr, Idaho Falls, for defendant/respondent/cross-appellant school district.

BISTLINE, Justice.

During the 1979–1980 school year, appellant Lawrence Durtschi was employed as a fourth grade teacher at the Ammon Elementary School. Durtschi transferred to Ammon from Iona Elementary School in the same district. The school district employing Durtschi was School District No. 93 of Bonneville and Bingham Counties, Idaho (hereinafter "the school district"). The minor plaintiffs in the various cases on appeal

were all female students in Durtschi's class. These plaintiffs, through their parents as guardians *ad litem*, alleged in their complaints that Durtschi, during school hours and while conducting or supervising school activities, sexually molested them. They further alleged that (1) the school district knew of Durtschi's acts against the plaintiff children, but nevertheless allowed him to continue as a teacher and to retain the children in his classroom, and (2) the school district knew or should have known that Durtschi had committed such acts against other children on prior occasions at Iona, but nevertheless had transferred him to the school in which the minor plaintiffs were enrolled.

Plaintiffs filed complaints for damages, naming both Durtschi and the school district as defendants. Plaintiffs' action against Durtschi was for lewd and lascivious conduct toward the minor plaintiffs. Their action against the school district sounded in negligence in its hiring and retaining Durtschi, and breach of its duty of care toward the minor plaintiffs. In all three cases, plaintiffs stated that as a result of Durtschi's conduct, the individual minor plaintiffs suffered irreparable physical injury and severe psychological injury with physical manifestations, and that the parents of the minor plaintiffs suffered physical and psychological injuries, as well as incurring the future financial obligations of providing treatment and care for their children. Recognizing that the three cases raised the same questions of law, the district court consolidated them for purposes of determining liability.

Durtschi answered the complaints, admitting some of the conduct alleged. Durtschi then cross-claimed against the school district for indemnification under the Idaho Tort Claims Act, I.C. § 6–901 *et seq.* (ITCA). The school district answered Durtschi's cross-claim by denying any liability, and cross-claimed itself against Durtschi for indemnification. The school district answered plaintiffs' complaints by denying liability and counter-claiming for attorney's fees.

The school district moved for summary judgment against the plaintiffs' claim for negligence. The district court held that the plaintiffs were precluded from recovery under the assault and battery exception to the ITCA. Judgment was entered accordingly, from which plaintiffs appeal. The district court also denied plaintiffs' motion for reconsideration; plaintiffs appeal that decision as well.

Thereafter, the school district moved for summary judgment against Durtschi's cross-claim for indemnification. Ultimately, the district court held that, as a matter of law, Durtschi was precluded from seeking indemnification from school district under the ITCA, because defendant-teacher was not acting within the course and scope of his employment when he committed the lewd sexual acts. Once again, judgment was entered for the school district. Both the plaintiffs and Durtschi appeal from that decision and judgment.

 As a preliminary matter we briefly review the law of summary judgment. A motion for summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When the motion is supported by depositions or affidavits, the adverse party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). The latter requirement, however, does not change the standards applicable to the summary judgment motion. *Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 310, 442 P.2d 442, 446 (1968). Those standards require the district court, and this Court upon review, to liberally construe the facts in the existing record in favor of the nonmoving party, and to draw all reasonable inferences from the record in favor of the nonmoving party. *Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1982). In this process the Court must look to the "totality of the motions, affidavits, depositions, plead-

ings, and attached exhibits," not merely to portions of the record in isolation. *Central Idaho Agency, supra,* 92 Idaho at 310, 442 P.2d at 446. Circumstantial evidence can create a genuine issue of material fact. *Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 868–69, 452 P.2d 362, 365–66 (1969). "[A]ll doubts are to be resolved against the moving party." *Ashby v. Hubbard,* 100 Idaho 67, 69, 593 P.2d 402, 404 (1979). The motion must be denied "if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable [people] might reach different conclusions." *Id.*

With that as background and as explained below, we affirm the district court's summary judgment against Durtschi, though on different grounds. We reverse the summary judgment against plaintiffs. Finally, we reject the school district's suggestion that we uphold the summary judgment against certain of the plaintiffs on the ground that they failed to provide timely notice as required in the ITCA.

## I. DEFENDANT DURTSCHI'S CROSS-CLAIM FOR INDEMNIFICATION.

■ I.C. § 6–903(c) of the ITCA provides:

The defense of its employee by the governmental entity shall be undertaken whether the claim and civil lawsuit is brought in Idaho district court under Idaho law or is brought in a United States court under federal law. *The governmental entity may refuse a defense or disavow and refuse to pay any judgment for its employee if it is determined that the act or omission of the employee was not within the course and scope of his employment or included malice or criminal intent.* (Emphasis added.)

In support of its motion for summary judgment against Durtschi's cross-claim for indemnification, the school district argued that it was excused from indemnification because Durtschi acted outside the scope of his employment, or alternatively

because Durtschi acted with criminal intent. *See, e.g.,* R., Vol. 2, pp. 263–64. The district court tackled the difficult "scope of employment" question, ultimately holding that as a matter of law Durtschi indeed had acted outside the scope of his employment, and thus was due no indemnification. The district court did not reach the question of criminal intent, though it noted:

[A]t least in Case No. 29,029 [Doe], Durtschi admitted performing the acts alleged, [and] thus the Court can conclude that a battery occurred. The only affirmative defense raised by the defendant is that he is protected by provisions of the Idaho Tort Claims Act. R., Vol. 3, p. 174.

While we admire the district court's courage and scholarly effort, we believe it chose the more troublesome and less certain of the two alternative routes. Upon reviewing the record in accordance with the standards set out above, we find that Durtschi unquestionably acted with criminal intent in all three cases. Being wary of recrossing the district court's bumpy route, we do not reach the question of scope of employment.

The "criminal intent" provision "is satisfied if it is shown that the defendant knowingly performed the proscribed acts...." *State v. Gowin,* 97 Idaho 766, 767–68, 554 P.2d 944, 945–46 (1976); *see also, e.g., State v. Sisneros,* 631 P.2d 856, 858 (Utah 1981) ("A person acts with intent when it is his conscious objective or desire to engage in the conduct or to cause the result."). Ordinarily, criminal intent would be a question for the trier of fact. However, in this case Durtschi has left no doubt that he acted with criminal intent.

Durtschi admitted to performing the lewd and lascivious acts on the minor plaintiffs. R., Deposition of Durtschi, pp. 22–23. He specifically named each of the minor plaintiffs as the objects of his actions. *Id.* at 32. He expressly stated that he acted intentionally. *Id.* at 22–23. In the face of the school district's arguments that he acted with criminal intent, Durtschi made no denials. In fact, he pled guilty to

related criminal charges of lewd and lascivious conduct. R., Vol. 2, p. 250. Every indication points to Durtschi knowingly and consciously performing criminal acts. We find nothing from which we can infer at all, much less reasonably infer, that Durtschi acted in any way but with criminal intent.

In light of these facts, pursuant to I.R. C.P. 56(c), summary judgment was appropriate. "[T]here is no genuine issue as to any material fact" that Durtschi acted with criminal intent. *Id.* In such an event, I.C. § 6-903(c) makes clear that the school district is absolved from indemnifying him as a matter of law. On these grounds, we affirm the district court's granting summary judgment to the school district against Durtschi's cross-claim.

## II. PLAINTIFF'S CLAIM AGAINST THE SCHOOL DISTRICT.

Pursuant to I.C. § 33-512(4), school districts in the state of Idaho are under a statutory duty to protect the morals and health of their students. In the instant case, the plaintiffs have alleged not only that the school district transferred Durtschi with knowledge that he had previously sexually abused students entrusted to his care, but that even after learning of his abuse of the plaintiff children, the school district allowed him to continue teaching, retaining those same children in his classroom. In its arguments and briefing to both the district court and this Court, the school district has not argued that there is no genuine issue of negligence;[1] rather, the school district asked the district court and this Court to assume "that that negligence actually occurred" for the purposes of considering its motion. R., Vol. 1, p. 121; Respondents' Brief, p. 15. The school district's position is that even if we assume that the plaintiffs' allegations are true— that the district has breached its statutory duty to the plaintiff children—the district is nevertheless absolved from any independent responsibility for its own negligence under the provisions of the ITCA. The district court, which had the full record before it, did not question the existence of a genuine issue as to the school district's negligence, but held the school district to be immune under the ITCA. R., Vol. 3, p. 122; Vol. 1, pp. 121-22. We agree that a genuine issue of fact exists as to the school district's negligence, but disagree that the school district is immune from liability for its own negligence.

With the enactment of the ITCA, the state has subjected itself to liability for its own negligent acts and the negligent acts of its employees. *Masters v. State*, 105 Idaho 197, 199-200, 668 P.2d 73, 75-76 (1983). The ITCA makes every state governmental entity liable for damages arising out of its own negligent acts or omissions. I.C. § 6-903. Liability is the rule with some specific exceptions. One of those exceptions is that a governmental entity is not liable for any claim which "[a]rises out of assault [or] battery...." I.C. § 6-904(4). The school district contends that the plaintiffs' action against it for negligent retention arose out of Durtschi's assault and battery on the plaintiff children, and therefore that the school district is immune from liability under § 6-904(4).

There is a distinction between the conduct which forms the basis of a cause of action in negligence and one for assault and battery. A cause of action in negligence requires the breach of a duty which is the proximate cause of the plaintiff's injury. Restatement (Second) of Torts § 328A (1965). A battery, on the other hand, requires intentional bodily contact which is either harmful or offensive. *Id.* § 13. Under the plaintiffs' allegations, the children's injuries arose out of the basic negligence of the school district. The injuries were the foreseeable consequence of the school district's negligence in retaining Durtschi despite full knowledge of his proclivities.

The fact that the plaintiffs' injuries were caused by a third party does not

---

1. This is in contrast with the question of whether there was no genuine issue as to Durtschi's criminal intent, which the school district did argue.

absolve the school district from liability for its negligence. The concept of supervening causation is inapplicable, under the allegations of the present case. Durtschi's actions were the foreseeable result of the school district's alleged failure to exercise due care to protect its students. The very risk which constituted the district's negligence was the probability that such actions might occur.

It is clearly unsound to afford immunity to a negligent defendant because the intervening force, the very anticipation of which made his conduct negligent, has brought about the expected harm. *Gibson v. United States,* 457 F.2d 1391, 1395 (3rd Cir. 1972). To do so would fly in the face of basic principles of tort law, as recounted in the Restatement:

> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.
>
> Restatement (Second) of Torts § 449. *See Smith v. Sharp,* 82 Idaho 420, 428, 354 P.2d 172, 176 (1960).

The fact that the foreseeable danger was from intentional or criminal misconduct is irrelevant; the school district had a statutory duty to make reasonable efforts to protect its students from such a danger. A breach of that duty constitutes negligence. Under the allegations of the present case,

Durtschi's actions would not constitute a supervening cause, and the school district's tortious conduct would not arise out of assault and battery. Rather, the roots of the assault and battery would be in the district's own negligence.

■ The instant appeal presents a question of first impression in Idaho.[2] Because there is no legislative history interpreting I.C. § 6–904(4) (the assault and battery exception to the ITCA) and because there is no Idaho case on point, we have considered cases interpreting a similar provision under the Federal Tort Claims Act (FTCA) (28 U.S.C. § 2680(h) (1974)) and under analogous state acts in reaching our decision that the school district is not immune from liability under the ITCA. The authorities are divided in defining the scope of actions which are excluded by statute from a waiver of sovereign immunity. A number of federal cases have held that the assault and battery exception to the FTCA bars recovery when a party seeks to hold the government directly liable for its negligence, which negligence is in turn alleged to be the proximate cause of an assault or battery committed by a government employee. *See, e.g., Doe v. United States,* 769 F.2d 174 (4th Cir.1985); *Hughes v. United States,* 662 F.2d 219 (4th Cir.1981); *Naisbitt v. United States,* 611 F.2d 1350 (10th Cir.1980) *cert. denied* 449 U.S. 885, 101 S.Ct. 240, 66 L.Ed.2d 111. Although the federal cases barring recovery are in the numerical majority, a number of federal courts as well as some state courts, have held for the plaintiff in situations analo-

---

**2.** The Idaho legislature largely modeled the ITCA on the FTCA. *Dunbar v. United Steelworkers of America,* 100 Idaho 523, 530, 602 P.2d 21, 28 (1979). There is a presumption that when the legislature adopted the statute of another jurisdiction, it also adopted the prior construction of that statute by courts of the other jurisdiction. *Leliefeld v. Panorama Contractors, Inc.,* slip op., p. 5 (Sup.Ct. No. 15349, issued Jan. 16, 1986); *Odenwalt v. Zaring,* 102 Idaho 1, 5, 624 P.2d 383, 387 (1980). In this case, as explained in more detail above, we have considered the line of federal decisions (which was, prior to 1971, and still is without controlling Supreme Court authority) holding that the language "[a]rises out of assault [and] battery" precludes claims against the government for its own independent

negligence which in the first instance brought about the assault and battery. We here find the presumption overcome by the facts that (1) such a construction contravenes the plain meaning of the statutory language by construing claims for independent, preceding negligence to "arise out of" the very conduct (not cause of action) which was the foreseeable result of the negligence and which occurred later in time, and (2) such a construction contravenes the policy of the Act to compensate the victims of and to hold the government accountable for its (here the school district's) negligent acts and those of its employees committed in the course and scope of employment. I.C. § 6–903(a).

gous to the case at bar. *See, e.g., Shearer v. United States*, 723 F.2d 1102 (3rd Cir. 1984), *rev'd on other grounds, United States v. Shearer,*[3] ── U.S. ──, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); *Gibson v. United States*, 457 F.2d 1391 (3rd Cir.1972); *Liuzzo v. United States*, 508 F.Supp. 923 (E.D.Mich.1981); *Loritts v. United States*, 489 F.Supp. 1030 (D.Mass.1980); *Ortiz v. County of Hampden*, 16 Mass.App. 138, 449 N.E.2d 1227 (1983); *Zerbe v. State*, 578 P.2d 597, *reh. denied* 583 P.2d 845 (Alaska 1978). We find this line of authority to be the better reasoned.

■ The cases barring recovery do so, in large part, in a conclusory fashion without any analysis of the important policy considerations which bear on this issue. *See, e.g. Hughes v. United States*, 662 F.2d 219 (4th Cir.1981). Many of the cases contain no allegations that the government knew or should have known that one of its employees was likely to commit an intentional tort and are therefore distinguishable from the instant case. *See Doe v. United States*, 769 F.2d 174 (4th Cir.1985); *Naisbitt v. United States*, 611 F.2d 1350 (10th Cir. 1980); *Johnson v. United States*, 547 F.2d 688 (D.C.Cir.1976). We do not believe that the Idaho legislature, by creating an exception to governmental liability for actions arising out of assault and battery, thereby intended to relieve state agencies from any duty to safeguard the public from employees whom they know to be dangerous. The factual situation alleged in the present case presents a haunting example. Surely the Idaho legislature could not have intended that school districts could ignore their statutory duty and retain known child molesters in the classroom with total impunity

under the ITCA. We can find no justification for such immunity.

■ Of course, a plaintiff cannot merely point to an assault and battery and then claim, based simply on its occurrence, that the state was negligent in not preventing it. For example, in the present case the school district would clearly not be liable if it had no knowledge of Durtschi's proclivities. In order to withstand dismissal under the intentional tort exception to the ITCA, a plaintiff must allege sufficient facts which, if proven, would demonstrate that the governmental entity should have reasonably anticipated that one of their employees would commit an intentional tort. In the instant case, the plaintiff's allegations, if proven, would permit a court to find that the school district's negligence proximately caused the plaintiff children's injuries. We therefore reverse the district court's award of summary judgment to the school district under I.C. § 6–904(4) of the ITCA.

### III. NOTICE OF CLAIM.

The school district urges us to affirm the district court's summary judgment as to plaintiffs Doe and Smith on a basis which the district court itself did not address: that plaintiffs failed to give notice of their claims within the required time period. This argument is without merit. Clearly unresolved questions of fact remain regarding when the adult plaintiffs ought to have given notice of their claim. The minor plaintiffs, on the other hand, gave timely notice as a matter of law.

---

**3.** *Shearer* was a negligence action against the United States under the FTCA. Private Vernon Shearer was kidnapped and murdered by another serviceman who had previously been convicted of murder and manslaughter. His mother initiated the action claiming that the army's negligence caused her son's death. She alleged that the army knew the other serviceman was dangerous and negligently kept him on active status without supervising his actions or warning others that he was at large.

The Third Circuit held that neither *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95

L.Ed. 152 (1950)—which held that a soldier may not recover under the FTCA for injuries that "arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159—nor the assault and battery exception to the FTCA barred recovery. The Supreme Court reversed on the ground that recovery was barred under the *Feres* doctrine. Chief Justice Burger, writing for himself and three other justices, also expressed his view that the action was barred under the assault and battery exception to the FTCA. 105 S.Ct. at 3042–44.

A. *The Adult Plaintiffs.*

At the time this action arose, I.C. § 6–906 provided: [4]

All claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred twenty (120) days from the date the claim arose or *reasonably should have been discovered,* whichever is later. (Emphasis added.)

To avoid thwarting meritorious claims on nonmeritorious, technical grounds, this Court consistently has taken a "liberal approach to interpreting the notice requirement of the ITCA." *Farber v. State of Idaho,* 102 Idaho 398, 402, 630 P.2d 685, 689 (1981).

■ Obviously, a *claim* is not necessarily discovered the instant the *injury or damages* occur. The claimant only knows of his or her claim against the governmental entity and the 120-day limit only begins to run after the claimant becomes fully apprised of not only the injury or damages, but also of the governmental entity's role. In *Trosper v. Raymond,* 99 Idaho 54, 577 P.2d 33 (1978), the plaintiff in a wrongful death action learned of Canyon County's interest in the gravel excavation pond in which the decedent drowned and filed notice of the claim against the county over a year after the drowning incident. *Id.* at 55, 577 P.2d at 34. In a *per curiam* opinion, we rejected the same argument advanced today—that the claim was too late because over 120 days had passed since the incident. *Id.* The critical date was not and is not the date of injury, but is the date of reasonable discovery of the claim. We held:

Determining when the county's interest in the gravel pond *reasonably should have been discovered* is a question of

material fact which, by its very nature, is inappropriate for determination on a motion for summary judgment. *Id.* (emphasis original).

Contrary to the representations of the school district, *Ralphs v. City of Spirit Lake,* 98 Idaho 225, 560 P.2d 1315 (1977) upholds the rule that the 120-day period runs only after discovery of the claim. In *Ralphs,* the majority held that as a matter of fact:

[O]n the date of the incident plaintiff Ralphs was aware that he had been attacked, assaulted and battered, that the Chief of Police was allegedly negligent in permitting the attack and that the city of Spirit Lake was negligent in employing a man of Newton's alleged characteristics and in failing to discharge him. *Id.* at 228, 560 P.2d at 1318.

The 120-day period began to run because the plaintiff *knew* of his claim against the city on the date in question, not because the plaintiff was *injured* on the date in question. The majority held that the plaintiff could not put off the date of discovery to the time when he learned of the *greater extent* of his injuries. *Id.* Here, plaintiffs allege they knew nothing of the role of the school district until a point well within the 120-day period preceding their notices.

■ Surely the school district does not suggest that every wrong-doing by one of its employees raises a presumption that it negligently retained that employee. The instant plaintiffs made no such presumption. They assert that they learned of the negligence of the school district in early August, 1980. At that time, during a presentence investigation of Durtschi, they discovered that the school district had retained Durtschi even after knowing of his illicit tendencies. R., Vol. 3, pp. 12, 17, and 43. They then filed their claims in less than 120 days. R., Vol. 3, pp. 14–15, 17, 20, 46–47. If these facts are established at trial, the plaintiffs hardly could have discovered the negligent retention of the

---

4. I.C. § 6–906 has been amended to provide for a 180-day period in which to give notice. 1985

Idaho Sess. Laws, ch. 136, § 2, p. 372.

school district until early August, 1980. If this is the case, notice for the adult plaintiffs' claims was entirely adequate.

### B. *The Minor Plaintiffs.*

The determination of reasonable discovery and notice on the part of minor plaintiffs is a different matter which this Court has yet to satisfactorily resolve.[5] In *Independent School District of Boise City v. Callister,* 97 Idaho 59, 539 P.2d 987 (1975), we held that minority was a factor "in deciding whether a claim reasonably should have been discovered," which consequently would determine the date from which the 120 days would run. *Id.* at 62, 539 P.2d at 990. However, we did not establish in *Callister* the *extent* to which minority was a factor. Nor did we have the opportunity to thoroughly consider the implications of Idaho's general tolling statute, I.C. § 5–230. As a result, the implications of a plaintiff's minority status for the notice requirement remained murky. We now undertake to clear the waters.

The long-standing policy of Idaho has been to shelter minor plaintiffs from the insensitive ticking of statutory clocks. *See Chapin v. Stewart,* 71 Idaho 306, 311, 230 P.2d 998, 1001 (1951). At the time of the instant cases, this policy was embodied in I.C. § 5–230(1),[6] which stated in pertinent part:

> If a person entitled to bring an action, other than for the recovery of real property, be, at the time the cause of action accrued, ... [w]ithin the age of majority ... the time of such disability is not a part of the time limited for the commencement of the action, provided however, that the time limited for the commencement of an action shall not be

tolled for a period of more than six (6) years on account of minority, incompetency, a defendant's absence from the jurisdiction, any legal disability or for other cause or reason except as specifically provided in section 5–213, Idaho Code.

Despite such statutes, some courts have refused to toll the time in which minors must give notice of their claims to governmental entities. These courts reason that the requirement of notice is not a statute of limitation, and that any exception from the notice requirement must come from the legislative branch. *See generally* 56 Am. Jur.2d, *Municipal Corporations, Counties, and Other Political Subdivisions,* §§ 782, 783. The majority in *Callister* apparently took this approach. *Callister, supra,* 97 Idaho at 63, 539 P.2d at 991.[7]

Such an approach ignores the fact that whether the requirement is to file notice or to file an action, the policy concerns of the state and the consequences for the minor litigant are the same. In a leading opinion, the Texas Court of Appeals aptly described the state's interests:

> The purpose of the various statutes of limitations in Texas is to require one to present his claim before evidence to rebut it is apt to be destroyed or lost.... The purpose of the charter provisions by many of the home rule cities in the State of Texas requiring a specified timely notice as a condition to the city's liability for damages for personal injuries, whether they be considered statutes of limitations or not, is similar in nature—to permit the city to investigate the basis of the claim while the facts are fresh.

> *City of Houston v. Bergstrom,* 468 S.W.2d 588, 590 (Tex.Civ.App.1971),

---

5. With the passage of I.C. § 6–906A, the legislature expressly applied the general tolling statute's policy of protecting minors to the notice of claim requirement in the ITCA. 1985 Idaho Sess. Laws, ch. 77, § 1, p. 151. As a result, the subsequent discussion of § 6–906's implications for minors pertains only to actions arising before the effective date of § 6–906A, which is July 1, 1985.

6. Recently, I.C. § 5–230(1) has been amended for the sake of clarity to read, "*Under* the age of majority." (Emphasis added.) 1985 Idaho Sess. Laws, ch. 74, § 1, p. 149. This change better reflects the intent of the section, which existed in the former version, to protect minors before they reached the age of majority.

7. The legislature essentially reversed this holding of *Callister* by enacting the new I.C. § 6–906A.

*writ of error refused; approved in McCrary v. City of Odessa,* 482 S.W.2d 151, 154 (Tex.1972) (citations omitted).

*Accord, Farber, supra,* 102 Idaho at 401, 630 P.2d at 688. The majority in *Callister* implicitly concedes the similarity between deadlines to file notice and statutes of limitation when it on the one hand denies that the notice of claim requirement is a statute of limitation, then on the other asserts that such "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute." *Callister, supra,* 97 Idaho at 63, 539 P.2d at 991.

The consequences of failing to apply Idaho's tolling statute—I.C. § 5–230—to notice requirements for the minor litigant are immediate, severe, and incongruous with the policy of § 5–230. Minors lack the judgment, experience, and awareness to protect their rights with appropriate, timely civil action; they also lack the ability to appear in court on their own behalf. I.C. § 5–306. To strictly apply the notice requirement to minors would inevitably result in the elimination of meritorious and justified claims, through no fault of the innocent minors. The notice requirement would accomplish this elimination just as surely and completely as would a running statute of limitation. Thus, it makes no sense to toll a statute of limitation because of the injured party's minority, while at the same time require that party to provide notice of his or her claim within 120 days. *See Turner v. Staggs,* 89 Nev. 230, 510 P.2d 879, 881 (1973), *cert. den.* 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 ("The requirement of giving notice presupposes the existence of an individual capable of giving it."); *McCrary, supra,* 482 S.W.2d at 153 ("[P]ersons of tender years ... are powerless to comply with such conditions."); *Lazich v. Belanger,* 111 Mont. 48, 105 P.2d 738, 739 (1940) ("It would be unreasonable to require that to be done which plaintiff was incapable of doing."); *cf. Callister, supra,* 97 Idaho at 66, 539 P.2d at 994 (Bakes, J., dissenting) ("To hold [that the general tolling statute tolls statute of

limitations but not the notice of claim statute] would be to reach the ridiculous conclusion that a 10 year old injured by a governmental entity must file his notice of claim within 120 days of his injury, but then, because I.C. § 5–230 will toll the running of the statute during his minority, may wait the remaining 8 years of his minority before initiating suit in the district court.").

The provision in I.C. § 6–907—that the minor's claim *"may* be presented and filed on behalf of the claimant by any relative, attorney, or agent representing the claimant" (emphasis added)—does not diminish the harshness of the consequences. As Justice Bakes noted in his dissent to *Callister,* "[t]he section [6–907] recognizes that others *may* act to protect a minor's rights, but it does not *require* them to act in order to preserve the minor's rights." *Callister, supra,* 97 Idaho at 65, 539 P.2d at 993 (Bakes, J., dissenting) (emphasis added). Minors should not have to rely upon others to protect their rights. The Washington Court of Appeals stated:

[I]t would be fundamentally unfair for a minor to be denied his recourse to the courts because of circumstances which are both legally and practically beyond his control. The legal disabilities of minors have been firmly established by common law and statute. They were established for the protection of minors, and not as a bar to the enforcement of their rights. 43 C.J.S. Infants § 19 (1945). The legislature recognized this when it inserted the provision in RCW 4.96.020 allowing a relative, agent or attorney to file a claim on behalf of the minor. However, ... his right of action should not depend on the good fortune of having an astute relative or friend to take the proper steps on his behalf.

*Hunter v. North Mason High School,* 12 Wash.App. 304, 529 P.2d 898, 899–900 (1974), *aff'd,* 85 Wash.2d 810, 539 P.2d 845 (1975); *reaffirmed* in *Hall v. Niemer,* 97 Wash.2d 574, 649 P.2d 98 (1982).

*See also Lazich, supra,* 105 P.2d at 739 ("Neither should his [the minor's] right of action be frittered away because of the omission of the parents to give notice."); *McDonald v. City of Spring Valley,* 285 Ill. 52, 120 N.E. 476, 478 (Ill.1918) ("A child with a meritorious cause of action but incapable of initiating any proceeding for its enforcement will not be left to the whim or mercy of some self-constituted next friend to enforce its rights.").

A number of courts have held that the enforcement of notice requirements against minor plaintiffs despite their inability to comply with it violated their rights to due process. *Tafoya v. Doe,* 100 N.M. 328, 670 P.2d 582, 585–86 (1983); *Hunter, supra,* 529 P.2d at 899–900; *Turner, supra,* 510 P.2d at 881–82; *McCrary, supra,* 482 S.W.2d at 154; *Lazich, supra,* 105 P.2d at 739; *McDonald, supra,* 120 N.E. at 478. At the very least, such enforcement violates the policy of tolling statutes like I.C. § 5–230.

To bring notice of claim requirements in alignment with due process and with general tolling statutes, many courts have applied the policy of their general tolling statute to the notice statute—in effect applying the tolling statutes by analogy. The Texas Court of Appeals provides an example:

> Insofar as the limitation statutes are concerned, the Legislature has expressed the public policy of this state in Articles 5518 and 5535, V.A.T.S. Those statutes, generally, provide that the time during which a claimant is under disability such as that of minority, shall not be deemed a portion of the time limited for the commencement of an action on his claim. It seems reasonable that such policy should apply to the time limit fixed for giving a city a notice of a claim against it. *Bergstrom, supra,* 468 S.W.2d at 590.

*See also Haymes v. Catholic Bishop of Chicago,* 33 Ill.2d 425, 211 N.E.2d 690, 692 (1965); *Hunter, supra,* 529 P.2d at 900; *City of Tulsa v. Wells,* 79 Okl. 39, 191 P. 186, 194 (Okla.1920); *Webster v. City of Charlotte,* 222 N.C. 321, 22 S.E.2d 900, 902 (1942); *Girman v. County of Cook,* 103

Ill.App.3d 897, 59 Ill. Sec. 534, 431 N.E.2d 1291 (Ill.App.1981). These courts come within a hair's breadth of applying the tolling statute without quite doing so.

We feel on firmer ground by directly applying the general tolling statute, I.C. § 5–230, to the notice statute, I.C. § 6–906. This is the more straightforward course suggested by Justice Bakes in his dissent to *Callister,* and taken by several jurisdictions. *Besette v. Enderlin School Dist. No. 22,* 288 N.W.2d 67, 74–75 (N.D.1980); *City of Barnesville v. Powell,* 124 Ga.App. 132, 183 S.E.2d 55, 56 (1971); *Barnum v. Martin,* 135 Ga.App. 712, 219 S.E.2d 341, 344 (1975), *cited with approval in Shoemaker v. Aldmor Mgt., Inc.,* 249 Ga. 430, 291 S.E.2d 549, 550 (1982). *Cf. Goldberg v. Bekins Moving & Storage Co.,* 423 So.2d 491 (Fla.App.1982) (Construes notice of claim period as a statute of limitations which was tolled by the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. § 525). Indeed, the legislature has compelled us to liberally construe its statutes "with a view to effect their objects and to promote justice." I.C. § 73–102. In this case, *any* reasonable construction of the general tolling statute results in its application to the ITCA notice provisions.

Both the plain meaning and the policy of I.C. § 5–230 reinforce this approach. Section 5–230 does not toll just the time after which the minor plaintiff must *file* an action; rather, it tolls the time after which the minor must *commence* the action. Section 6–906 requires the minor plaintiff to *commence* the action by filing notice. As Justice Bakes observed in his dissent to *Callister,* "The filing of the notice of claim is an integral part of the initiation of an action against a governmental entity." *Callister, supra,* 97 Idaho at 66, 539 P.2d at 994 (Bakes, J., dissenting). It follows that § 5–230 tolls the running of the 120-day period before the minor plaintiffs file notice, which filing would commence their action.

This surely reflects the legislative policy behind these statutes. If it were otherwise, as Justice Bakes noted, even

children orphaned by automobile accidents would be required to file notice, or otherwise be deprived of their access to the courts:

It cannot be seriously asserted that children in such circumstances are capable of protecting their interests or that there will be a party available who can protect the children's interest by filing a notice of claim within 120 days. I cannot believe the legislature intended to prevent such claimants from bringing their action by non-compliance with the notice of claim statute. *Id.* at 67, 539 P.2d at 995.

The obvious intent of I.C. § 5–230 is to preserve the rights of injured minors until they are old enough to take appropriate action. We must construe the statute in harmony with its objective. *Local 1494 of Internat'l Assoc. of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978); I.C. § 73–102.

To interpret I.C. §§ 6–906 and 6–907 as somehow placing the notice requirement beyond the reach of the tolling statute would be to read these statutes as impliedly repealing the tolling statute's protection of minors injured through the wrongdoing of the government. According to a well-established rule of statutory construction, we must presume the legislature did not intend to limit the pre-existing general tolling statute by mere implication. *Jordan v. Pearce,* 91 Idaho 687, 691, 429 P.2d 419, 423 (1967); *see also, e.g., American Bank & Trust Co. v. Dallas County,* 463 U.S. 855, 103 S.Ct. 3369, 3380, 77 L.Ed.2d 1072 (1983) *reh. denied* 463 U.S. 1250, 104 S.Ct. 39, 77 L.Ed.2d 1457; *see generally,* 1A N. Singer, *Sutherland Statutory Construction* §§ 23.10 (4th ed. 1973) ("[Court] [r]eports abound with decisions reflecting and endorsing a presumption against repeal by implication."), and 22.13 ("Amendments by implication, like repeals by implication, are not favored and will not be upheld in doubtful cases....") (4th ed. 1985) (footnotes omitted). The reason for this presumption one commentator explained as follows:

The presumption against implied repeals is founded upon the doctrine that

the legislature is presumed to envision the whole body of the law when it enacts new legislation. There is also the assumption that existing statutory and common law is representative of popular will. *This presumption has been said to have special application to important public statutes of long standing.* Singer, *supra* at § 23.10 (emphasis added).

The general tolling statute certainly is an important public statute of long standing which the legislature would not amend or repeal without specific mention.

 Only when new legislation is irreconcilable with and repugnant to a pre-existing statute may we find an implied repeal. *Jordan, supra,* 91 Idaho at 691, 429 P.2d at 423; *Brady v. Place,* 41 Idaho 747, 750, 242 P. 314, 315 (1925); *see generally, Singer, supra* at § 23.09. Far from being repugnant and irreconcilable, the notice statute and the statute providing for a minor's agent to give notice, I.C. § 6–907, co-exist harmoniously with the general tolling statute, even when the tolling statute is applied to the notice requirement. The effect of the notice statute merely is delayed until the plaintiff reaches the age of majority, or for six years, whichever comes first. The opportunity for an agent to file on behalf of the minor continues, just as the opportunity for a minor's agent to commence any tort continues regardless of the tolling of statutes of limitation. As Justice Bakes said, "I cannot believe it was in the contemplation of the legislature to implicitly repeal I.C. § 5–230 by a sentence in the Idaho Tort Claims Act allowing a minor's adult representative to protect the minor's interest by filing a claim on the minor's behalf." *Callister, supra,* 97 Idaho at 66, 539 P.2d at 994 (Bakes, J., dissenting). More likely the legislature contemplated that § 5–230 would continue to guard the rights of minors from the ravages of relentless and insensitive deadlines.

 A final motive for our applying I.C. § 5–230 itself rather than just its "policy" is that § 5–230 is a *qualified* tolling

statute. Rather than delay the running of time provisions until the age of majority, it delays the running until the age of majority *or for six years*, whichever comes first. Since the policy of § 5–230 involves more than just tolling until the age of majority is reached, that policy is best served by applying the statute directly to the notice statute. Thus, a minor must give notice within 120 days of his or her attaining the age of majority, but not later than 120 days after six years from the date the claim arose or should reasonably have been discovered.[8] Of course, the minor's age and level of maturity is still a factor in determining when the claim should reasonably have been discovered.

The legislature recently amended the ITCA in a fashion which substantiates our present holding. New § 6–906A makes clear both the legislature's intent to protect minor claimants from the running of the notice time period, and its intent to apply the precise policy of I.C. § 5–230, including the six-year maximum, to notice requirements:

> No person who is a minor shall be required to present and file a claim against a governmental entity or its employee under this act [this section] until one hundred twenty (120) days after said person reaches the age of majority or six (6) years from the date the claim arose or should reasonably have been discovered, whichever is earlier. 1985 Idaho Sess. Laws, ch. 77, § 1, p. 151.

The legislature rejected the holding to the contrary in *Callister*. It demonstrated that the notice of claim requirement was never meant to be magically exempted from the tolling statute—that the interests of minors who had suffered injury at the hands of the government were never meant to be abandoned.

In sum, we hold that the general tolling provision, I.C. § 5–230, applies to all procedures integral to commencing actions against private or public defendants, including the notice procedure of I.C. § 6–906. Consequently, § 5–230(1) tolled the running of the time within which § 6–906 required the minor plaintiffs to give notice to the school district. Thus, the notice given on their behalf was adequate as a matter of law. To the extent *Callister* is inconsistent with our holding today, we acknowledge its disapproval by the legislature and acquiesce therein.

## IV. CONCLUSION.

The district court's granting of summary judgment against Durtschi's cross-claim is affirmed. The district court's granting of summary judgment against plaintiffs is reversed, and the matter is remanded for trial on the question of the school district's negligence.

The school district's costs related to the cross-claim to be paid by Durtschi; the plaintiff's costs related to their claims to be paid by the school district. No attorney's fees.[9]

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD, Justice, dissenting.

I dissent for two reasons. First, because the majority unnecessarily overturns several years of this Court's decisions on an issue not decided by the district court in its decision on summary judgment. Secondly, because the majority's holding regarding intentional torts cannot survive the analysis of the Bakes, J. dissent.

When the legislature enacted our Tort Claims Act it saw fit to require that a claimant submit a notice of claim to the governmental entity within 120 days from

---

**8.** As the instant facts do not involve the passage of six years time, we do not reach the question of the constitutionality of the six-year proviso to I.C. § 5–230 and to new § 6–906A.

**9.** Had Durtschi argued he had not acted with criminal intent, then we may have found his cross-claim to be frivolously pursued. However, the arguments among counsel in the district court and on appeal centered on the question of whether Durtschi acted within the scope of his employment, which is a close question.

the date the claim arose, or reasonably should have been discovered. Admittedly such was an extremely harsh requirement as a precedent to filing an action. Nevertheless, in a series of cases, over constitutional challenge, this Court upheld that authority of the legislature and the validity of the notice of claim requirement. That series of cases culminated in *Independent School District of Boise v. Callister*, 97 Idaho 59, 539 P.2d 987 (1975). In *Callister*, a very closely divided Court, over well-reasoned and persuasive dissents, rejected the assertion that the notice period of the statute was tolled during the minority of a claimant, "particularly in view of the fact that he was incapacitated."

In 1985 the legislature adopted a more lenient attitude and suspended the effect of the notice of claim until a minor claimant reached majority, or to a maximum period of six years. Such conclusively indicates a change in legislative intent but does not result in a retroapplication of the new statute to a time and circumstance well prior to the 1985 change in statute.

Hence, at the time and circumstances of the instant case, the legislative requirement as to notice, was 120 days from the time the claim arose or reasonably should have been discovered. To hold as does the majority that the 1985 statute somehow controls the notice of claim requirement in the instant case, or that the legislature has overruled *Callister*, is simple sophistry.

The majority opinion cites *Farber v. State of Idaho*, 102 Idaho 398, 630 P.2d 685 (1981) in support of its conclusions. I fail to see any support therein. *Farber* involved damage sustained allegedly as a result of highway construction. There the Court did not question the validity or effectiveness of the 120-day notice requirement from the time the claim arose, but held that the claim did not arise prior to the time that the construction project had been completed and accepted by the governmental entity. The majority opinion further relies on a series of cases from the state of Washington which were considered and rejected in *Callister*.

Just as the majority opinion slips and slides around the then legislative requirement of a 120-day notice of claim, so the majority evades the clear legislative intent not to waive sovereign immunity in the cases of intentional torts. Hence, I concur in the dissent of Bakes, J. Whether the legislature should have exempted intentional torts from the purview of the Tort Claims Act is not for question by this Court, since the policy reasons for that legislative decision cannot be examined. It is sufficient to say that the broadening of the scope of governmental entity liability has allegedly resulted in such substantial losses that some governmental units in Idaho are no longer able to obtain liability insurance coverage.

While under the strictures of *Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970), some waiver of sovereign immunity was and is required of our legislature, I see no public policy to be served by requiring Idaho's governmental units to become insurers against every risk that any citizen may encounter in life. I would hold that the Tort Claims Act does not demonstrate any legislative intent that governmental entities in Idaho should be responsible in damages for *crimes* committed by employees.

BAKES, Justice, dissenting:

Interpreting the allegations of plaintiffs' complaint as stating a cause of action for negligence, the majority, in Part II, fails to recognize that the essence of plaintiffs' cause of action "arises out of" an assault and battery, and thus the school district is exempt under the Idaho Tort Claims Act (ITCA). It is beyond dispute that Durtschi's lewd and unconsented touching of the minor plaintiffs constituted a battery. Nevertheless, the majority concludes that plaintiffs' cause of action "arises out of" or has its roots in negligence, rather than arising out of a battery. This conclusion ignores the express language of the ITCA.

I.C. § 6–904 does not merely exclude liability *for* assaults and batteries; rather, it states that the governmental entity "shall not be liable for any claim which *arises out*

*of* assault, battery...." (Emphasis added.) If we attribute to the legislative body an intent to give that term *"arises out of* assault, battery" its ordinary and traditional meaning, it is clear that plaintiffs' claims "arise out of" Durtschi's battery on these children. Durtschi's battery is the *sine qua non* of appellants' claim. Appellants' claim of negligence is without legal significance absent the intentional acts of Durtschi. As a result, appellants' claims against the school district "arise out of" Durtschi's battery and are therefore barred by I.C. § 6–904. "No semantical recasting of events can alter the fact that the battery was the immediate cause of [plaintiffs' injuries] and, consequently, the basis of [their] claim." *United States v. Shearer*, — U.S. —, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985).

The majority's argument effectively removes from the statute the words "arising out of." This the majority does without evidence from any extrinsic source indicative of legislative intent to support such a reading of the statute. The logical interpretation of the phrase "arising out of" would employ a common sense meaning, *i.e.*, "based upon" an assault or battery, or "having its roots in" an assault or battery.

The Idaho Tort Claims Act, I.C. §§ 6–901 *et seq.*, was based upon the Federal Tort Claims Act, and the exception here in question, the assault and battery exception, is identical to that of the Federal Tort Claims Act. In *Odenwalt v. Zaring*, 102 Idaho 1, 624 P.2d 383 (1980), this Court held that when the Idaho legislature adopted a statute from another jurisdiction it "will be presumed that the legislature adopted the statute with the prior construction placed upon it by the courts of the other jurisdiction." *Odenwalt v. Zaring, supra* at 5, 624 P.2d at 387. Hardly a month ago in *Leliefeld v. Panorama Contractors, Inc.*, (filed January 16, 1986), (rehearing granted March 26, 1986) we reiterated and described that rule as "a time honored principle to which this Court has faithfully adhered," repeating the following quotation from *Odenwalt:*

" 'This Court has consistently held that a statute which is adopted from another jurisdiction will be presumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction. *Nixon v. Triber*, 100 Idaho 198, 200, 595 P.2d 1093, 1095 (1979); *State v. Miles*, 97 Idaho 396, 545 P.2d 484 (1976); *Doggett v. Electronics Corp. of America*, 93 Idaho 26, 454 P.2d 63 (1969).' *Odenwalt, supra*, 102 Idaho at 5; 624 P.2d at 387." *Leliefeld v. Panorama Contractors, Inc.*, (1986).

As *Leliefeld* instructs, our analysis of the Idaho Tort Claims Act in this case should commence with an analysis of the federal cases interpreting the Federal Tort Claims Act as of 1971, the date when Idaho adopted the federal act.

The Idaho Tort Claims Act passed in 1971 was modeled after the Federal Tort Claims Act, and the "exceptions to governmental liability" set out in I.C. § 6–904, subsection (4), which are involved in this case, are identical to the exceptions set out in Section 2680(h) of the Federal Tort Claims Act. That subsection exempts from the waiver of immunity any claim which:

"4. Arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

Prior to the adoption of the exception set out in I.C. § 6–904(4), the federal courts had unanimously held that the "exception to governmental liability" contained in 2680(h) of the Federal Tort Claims Act, from which I.C. § 6–904(4) was copied, covered cases in which negligence underlies the claims. The United States Supreme Court first addressed that issue in *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), a case involving a claim for misrepresentation under 2680(h), wherein the court stated:

"We are in accord with the views urged by the government, and *unanimously adopted by all circuits* which have previously had occasion to pass on the ques-

tion, that Section 2680(h) comprehends claims arising out of the negligent, as well as willful, misrepresentation." 366 U.S. at 702, 81 S.Ct. at 1298. (Emphasis added.)

The United States Supreme Court in *United States v. Shearer,* —— U.S. ——, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985), acknowledged that *United States v. Neustadt, supra,* had held that "the exception in Section 2680(h) [the intentional tort exception clause] for claims 'arising out of ... misrepresentation' covers cases in which negligence underlies the inaccurate representation."

*Moos v. United States,* 225 F.2d 705 (8th Cir.1955), was an even earlier case where a plaintiff brought suit on a negligence theory, based upon an unconsented operation on his right leg, which the court held constituted a battery. The court held that the mere existence of what might be referred to as a separate claim based upon negligence does not negate the existence of the assault and battery, and therefore the claim was barred under the Tort Claims Act. The 8th Circuit Court in *Moos* adopted the reasoning of "the district court, which we think has clearly demonstrated that the plaintiff's claim against the government is, under applicable law, one arising out of an assault and battery, of which the court had no jurisdiction under the Tort Claims Act." The district court in its opinion stated:

"Since the unauthorized operation constituted an assault and battery, any attempt to segregate and separately state a cause of action for negligence is unavailing. The fact of the negligent transfer of the site of operation and the resulting delay in performing the wanted operation 'arose out of' the assault and battery and formed an integral part of the entire incident which encompassed the battery. It is immaterial that the negligence may have occurred first in point of time. *United States v. Wilcox,* D.C.S.D.N.Y., 117 F.Supp. 119. See *Duenges v. United States,* D.C.S.D.N.Y., 114 F.Supp. 751 (claim arising out of false imprisonment)...." *Moos v. United States,* 118 F.Supp. 275, 277 (D.Minn 1954).

The facts of *Moos* are substantially similar to those in this case. In *Moos,* the unauthorized operation [touching] constituted an assault and battery, as did the unauthorized touching of the plaintiffs in this case. Also, in *Moos* the plaintiff was arguing about "the negligent transfer of the site of the operation," and in this case the plaintiffs are alleging the negligent transfer of Durtschi.

Prior to 1971, one other federal circuit court had addressed this issue. In *Panella v. United States,* 216 F.2d 622 (2nd Cir. 1954), the plaintiff, Panella, was an inmate at a federal hospital and was assaulted by another inmate. He sued the United States "claiming that the assault was caused by the negligence of employees of the United States in failing to provide adequate guards and otherwise properly supervise those confined in the institution." *Panella* at 623. The United States moved to dismiss on grounds that Panella's suit was barred by the assault and battery exception to the Tort Claims Act. The Second Circuit, speaking through Judge John Harlan (who only four months later was appointed to the United States Supreme Court), rejected the government's argument on the grounds that the assault and battery exception did not extend to assaults and batteries committed by *non-governmental* employees. However, the Court nevertheless made it clear that, had the assault in *Panella* been committed by a government employee, Panella's action, though framed in the terms of negligence, would have been barred. The Second Circuit's distinction between assaults committed by government employees as opposed to non-government employees was based on its reasoning that, in the latter instance, "a negligent action is not merely an alternative form of remedy to an action for assault but negligence is rather the essence of the plaintiff's claim." *Panella v. United States, supra* at 624. The Court reasoned with regard to government employees that an assault committed by such an employee

would give rise to an action against the government without any showing of negligence, and that in such instances the act's assault and battery exception was clearly intended to exonerate the government from all liability, no matter what the form of the action.

Prior to 1971 a federal district court case, *Collins v. United States*, 259 F.Supp. 363 (E.D.Penn.1966), addressed this issue. In *Collins*, the plaintiff's complaint alleged that on November 15, 1963, an employee of the Post Office, one Brosz, acting in the scope of his employment "pushed, hit and struck" the plaintiff. The complaint further alleged that the United States was negligent in hiring and retaining Brosz in its employ when it *knew or should have known of his "violent, vicious and malicious propensities."* The defendant moved to dismiss, claiming that the plaintiff's complaint of negligent employment fell within the exception of Section 2680(h) of the Tort Claims Act, *i.e.,* "any claim arising out of assault, battery...."

The *Collins* court in its opinion, after noting that the plaintiff was arguing that his claim is not founded on the assault and battery, but rather on the negligence of the government in employing who it knew or should have known had "violent, vicious and malicious propensities," stated:

> "It is true that the claim here is predicated on negligence. However, that negligence would have been without legal significance absent the alleged act of Brosz. Without that, there would have been no actionable negligence. It was the attack which served to attach legal consequences to defendant's alleged negligence. Congress could easily have excepted claims *for* assault. It did not; it used the broader language excepting claims *arising out of* assault. It is plain that the claim arose only because of the assault and battery, and equally plain that it is a claim arising out of the assault and battery. This being so, the United States has not waived its immunity as respects this claim." 259 F.Supp. at 364, emphasis in original.

Thus, at the time that Idaho adopted the Federal Tort Claims Act in 1971, and particularly Section 2680(h) as I.C. § 6–904(4), the federal cases interpreting that act had held that the exemption for intentional torts set out in 2680(h) included not only the intentional tort itself, but any negligence which underlies the intentional tort. Accordingly, if we are to follow the "time honored principle" described in *Leliefeld* "that a statute which is adopted from another jurisdiction will be presumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction," *Leliefeld*, then we should uphold the district court's conclusion that plaintiffs' claim "arises out of assault [and] battery." I.C. § 6–904(4).

The federal cases which have been decided subsequent to 1971, the year Idaho adopted the Tort Claims Act from the federal act, have continued the same interpretation as those decided before 1971. The most recent, and of course the final and ultimate authority is the recent decision of the United States Supreme Court in *United States v. Shearer*, —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). In that case, the United States Supreme Court was asked to review a wrongful death judgment, on two grounds, one of which was that the claim was barred by the assault and battery exception of the Federal Tort Claims Act. In *Shearer*, the mother of an Army private, Vernon Shearer, brought an action against the Army alleging that the Army's negligence caused her son's death. Private Shearer, while off duty and away from the military base, was kidnapped and murdered by another serviceman, Private Andrew Heard. Mrs. Shearer alleged that the Army knew that Private Herd was dangerous; he had been convicted by a German court of manslaughter and sentenced to a 4-year prison term while assigned to an Army base in Germany in 1977. As in the present case, Mrs. Shearer alleged that in spite of such knowledge the Army transferred Private Heard to the military base where her son was subsequently

murdered. [Note the similarity to the plaintiffs' claims in this case.] Mrs. Shearer claimed that the Army "negligently and carelessly failed to exert a reasonably sufficient control over Private Herd and failed to warn other persons that he was at large." 105 S.Ct. at 3041.

The Court of Appeals had held that Mrs. Shearer's suit was not precluded by the assault and battery exception to the Federal Tort Claims Act. The Court of Appeals reasoned, similar to the majority in the present case, that Mrs. Shearer's complaint alleged negligence and that "if an assault and battery occurred as a 'natural result' of the government's failure to exercise due care, the assault and battery may be deemed to have its roots in negligence and therefore it is within the scope of the FTCA." *Shearer v. United States,* 723 F.2d 1102, 1107 (3rd Cir.1983). Additionally, the Court of Appeals ruled that Mrs. Shearer's claim was not precluded by the *Feres* doctrine which holds that military command judgments are exempt from the waiver of immunity under the Tort Claims Act and are therefore not actionable. The United States Supreme Court in *Shearer* reversed the decision of the Court of Appeals.[1] In the *Shearer* opinion, Chief Justice Burger, speaking for a plurality of four, rejected the Court of Appeals' reasoning regarding the assault and battery exception, stating that it was clear that Mrs. Shearer's claim "arises out of the battery committed by Private Herd ... [and that she] cannot avoid the reach of [the assault and battery exception] by framing her complaint in terms of negligent failure to prevent the assault and battery." 105 S.Ct. at 3042. The Court's opinion held that the assault and battery "does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *Id.* (emphasis in original). Thus, the assault and battery exception covers claims similar to plaintiffs' claim in the present case that, although sounding in negligence, actually stem from a battery committed by a government employee. " 'The express words of the statute' bar [such] claim[s] against the government." *Shearer* at 3042, *citing United States v. Spelar,* 338 U.S. 217, 219, 70 S.Ct. 10, 11, 94 L.Ed. 3 (1949).

The Supreme Court found further support for its reading of the exception in the legislative history of the act and from its cases interpreting other exceptions to the act. The Court noted that there was no indication that Congress distinguished between "negligent supervision" claims and *respondeat superior* claims, with only the latter excluded under the act. And regarding interpretation of similar exceptions, the Court stated:

"In *United States v. Neustadt,* 366 U.S. 696 [81 S.Ct. 1294, 6 L.Ed.2d 614] (1961), the Court held that the exception in Section 2680(h) [the intentional tort exception clause] for claims 'arising out of ... misrepresentation' covers cases in which negligence underlies the inaccurate representation. And in *Kosak v. United States,* ... [465 U.S. 848] 104 S.Ct. 1519 [79 L.Ed.2d 860] (1984), we held that the exception for claims 'arising in respect of ... the detention of any goods or merchandise by any officer of customs' includes a claim for negligent handling. Because Congress viewed these exemptions in the same light as the exception at issue here [the assault and battery exception], *see, e.g.,* H.R.Rep. No. 1287, 79th Con., 1st Sess., 6 (1945), it is inescapable that the phrase 'arising out of assault or battery' is broad enough to encompass claims sounding in negligence." *Shearer,* 105 S.Ct. at 3043.

Seven United States Courts of Appeals have addressed the assault and battery exception, and all have held that the govern-

---

1. Only eight justices sat. Of those eight, all joined the opinion regarding the *Feres* doctrine, and four joined the opinion regarding the FTCA assault and battery issue, but of the four not joining in that part of the opinion, none dissented in the assault and battery issue.

ment is not liable for claims such as those asserted by plaintiffs in this case.[2]

In a case factually similar to the one before us, *Hughes v. United States*, 662 F.2d 219 (4th Cir.1981), the Fourth Circuit held that a claim against the government based upon illegal sexual conduct was barred under the assault and battery exception even though the complaint was framed in the terms of negligence. In the *Hughes* case, a postal employee had taken indecent sexual liberties with two minor female children. Plaintiffs sued the postal service alleging that it negligently retained the individual in its employ, despite his having been arrested and charged with a similar offense five years prior to the occurrence of the alleged conduct in the present case. The district court rejected plaintiffs' claim on grounds that it was barred by the assault and battery exception. The court noted, "There would have been no assault except for the separate and independent acts [of the employee]. Without his independent assault, there would be no cause of action. It is to this action the statute does not waive immunity." *Hughes v. Sullivan*, 514 F.Supp. 667, 670 (E.D.Va.1980). The Fourth Circuit affirmed (per curiam), finding no error of law in the district court's reasoning.[3]

The Tenth Circuit has likewise held that a claim against the government for its antecedent negligence in retaining or supervising its employees may be barred by the assault and battery exception if the underlying facts indicate that the theory of negligence is but an alternative theory utilized by a plaintiff to circumvent the Tort Claims Act's exceptions. In *Naisbitt v. United·States*, 611 F.2d 1350 (10th Cir. 1980), the court upheld a district court's dismissal of plaintiff's action against the government based upon the trial court's reasoning that "[h]ere ... government liability is possible only because government employees committed the intentional act. Thus, although plaintiff's complaint is drawn in terms of negligence, the essence of the cause of action is an assault and battery committed by two individuals who were government employees at the time of the wrongful acts. The claim arises *only* because of the *intentional wrong* committed by employees of the sovereign and is, therefore, a claim 'arising out of' an assault and battery and is within the scope of [the] exception. Plaintiff's negligence the-

2. The cases which have adopted the interpretations which are at odds with that of the majority opinion in the present case are out of the Second, Fourth, Fifth, Seventh, Eighth, Tenth and District of Columbia Circuits. *See, e.g., Panella v. United States*, 216 F.2d 622 (2nd Cir.1954), discussed in text, *supra* at 1254; *Hughes v. Sullivan*, 514 F.Supp. 667 (E.D.Va.1980), *aff'd sub nom. Hughes v. United States*, 662 F.2d 219 (4th Cir.1981), discussed in text, *supra* at 1246; *Doe v. United States*, 769 F.2d 174 (4th Cir.1985), discussed *infra* at n. 3; *Garcia v. United States*, 776 F.2d 116 (5th Cir.1985), discussed in text, *infra* at 1258; *Gaudet v. United States*, 517 F.2d 1034 (5th Cir.1975) (court found without merit plaintiff's argument that his claim was grounded in negligence not in an intentional tort, holding that "the substance of the claim and not the language used in stating it ... controls ... [and] no legal alchemy can transform it into a negligence action and confer jurisdiction where there is none."); *Lojuk v. Quandt*, 706 F.2d 1456 (7th Cir.1983) (action asserted by plaintiff as a malpractice claim held barred by assault and battery exception in that, despite claim of negligence, *i.e.*, malpractice, facts clearly indicated that doctor's acts were intentional and constituted an assault and battery); *Moos v. United*

*States*, 225 F.2d 705 (8th Cir.1955), discussed in text, *supra* at 1254; *Naisbitt v. United States*, 611 F.2d 1350 (10th Cir.1980), discussed in text, *infra* at 1257; *Johnson v. United States*, 547 F.2d 688 (D.C.Cir.1976), discussed in text, *infra* at 1258.

The only Court of Appeals which has adopted an interpretation in favor of appellants is the Third Circuit which decided the *Shearer* case which, as discussed above, was reversed by the Supreme Court.

3. The Fourth Circuit has recently reaffirmed its position in *Doe v. United States*, 769 F.2d 174 (4th Cir.1985), where it held that plaintiff's claim against the government based on the illicit sexual conduct of an Air Force clinical social worker was barred by the assault and battery exception, even though plaintiff's claim was based on a theory of medical malpractice. *Cf. Andrews v. United States*, 732 F.2d 366 (4th Cir.1984) (action against government based on theory of malpractice not barred by FTCA's assault and battery exception in that under the facts of case no assault or battery occurred from illicit sexual conduct because female victim consented to said conduct).

ory is, in this case, merely an alternative theory of liability." 611 F.2d at 1352–53 (citations omitted).

The District of Columbia Circuit has likewise held that "a litigant cannot circumvent the [Tort Claims Act] by the simple expedient of drafting in terms of negligence a complaint that in reality is a claim as to which the United States remains immunized." *Johnson v. United States,* 547 F.2d 688, 691–92 (D.C.Cir.1976).

Finally, the Fifth Circuit, in a recently released opinion, has held that a claim alleging negligence in the supervision of a governmental employee is nonetheless barred by the Tort Claims Act when the substance of the claim is grounded on the underlying illegal sexual conduct committed by said employee. In *Garcia v. United States,* 776 F.2d 116 (5th Cir.1985), the court, noting the Supreme Court's decision in *Shearer,* held plaintiff's claim alleging negligence in the supervision of a military recruiter who allegedly engaged in sex acts with plaintiff, was barred by the assault and battery exception to the FTCA. The court held that the "arising out of" language in its context was straightforward, and that "even if there were ambiguity or uncertainty of application inherent in the language of the proviso, it would not alter the result. The government's waiver of sovereign immunity is to be narrowly read. That principle requires that in reading this proviso to the sovereign's consent to suit *any ambiguity is to be resolved against consent."* 776 F.2d at 118 (emphasis added.) Based on this reasoning, the court concluded that the government had not consented to suit under the facts of the case before it.[4]

Of the cases relied upon in the majority opinion in support of their interpretation of I.C. § 6–904(4), none of them were decided prior to 1971, the year that Idaho adopted the analogous provision from the Federal Tort Claims Act. Accordingly, under our recent decision in *Leliefeld,* they are not to be considered in determining what the interpretation of the federal act was at the time that our legislature adopted it. Furthermore, of the cases cited in the majority opinion, only three are federal cases. Two of them, *Liuzzo v. United States,* 508 F.Supp. 923 (E.D.Mich.1981), and *Loritts v. United States,* 489 F.Supp. 1030 (D.Mass. 1980), are district court cases, which, because of subsequent decisions in their circuits are of questionable value. The circuit court of appeals for both those courts have adopted reasoning which seriously undercuts the rationale of the *Loritts* and *Liuzzo* courts. In *Jimenez-Nieves v. United States,* 682 F.2d 1 (1982), the First Circuit, in addressing a claim against the government based on negligent acts committed by employees of the Social Security Administration, stated, "In examining a complaint we are bound to look beyond the literal meaning of the language used to ascertain the *real cause of the complaint." Id.* at 6 (emphasis added), *citing Fitch v. United States,* 513 F.2d 1013 (6th Cir.1975). In construing the cause of action before it, the *Jimenez* court found plaintiff's complaint to state causes of action based on defamation (libel or slander). As such, the court noted, "Plaintiff's claim fits 'the traditional and commonly understood legal definition of the tort of defamation,'" 682 F.2d at 6, and as such it was barred by the intentional tort exception of the Federal Tort Claims Act. The First Circuit expressly declined to follow contrary authori-

---

**4.** In reaching its conclusion in *Garcia,* the Fifth Circuit recognized that it was overruling admitted *dicta* of a prior opinion, *Underwood v. United States,* 356 F.2d 92 (5th Cir.1966). In *Underwood,* the Fifth Circuit had intimated that, if presented with facts similar to those found in *Garcia,* it would have ruled that the assault and battery exception was inapplicable. The court then noted that normally given a 4–4 decision from the Supreme Court it might not "retreat from *Underwood* and its reasoning." 776 F.2d at 118. However, it felt that the Supreme Court's decision in *Shearer* was "a strong signal" regarding the interpretation of the "arising out of" language of the assault and battery exception. Apparently, the Fifth Circuit felt the signal from the Supreme Court was strong in that, "while only four justices in *Shearer* joined the language interpreting the 'arising out of' proviso, the other four justices did not reject its applicability...." *Id.* at 118.

ty out of the Third Circuit which had held that plaintiffs stating a claim for defamation, if also utilizing the language of negligence, were not precluded from bringing their action by the intentional tort exception to the FTCA. "We decline to follow the Third Circuit in this case because we do not believe that the fact that the defamation is caused negligently makes it any the less a defamation." 682 F.2d at 6. Thus, the rationale of *Loritts* is undermined.

In *Fitch v. United States*, 513 F.2d 1013 (6th Cir.1975), the Sixth Circuit likewise held, "Although [plaintiffs] cast their complaint in the guise of a negligence action, this does not automatically take the case outside the [intentional tort] exception. Courts must look beyond the literal meaning of the language to ascertain the real cause of complaint." 513 F.2d at 1015. This language from the Sixth Circuit seriously undercuts the rationale of the district court in *Liuzzo*.

The third case, *Gibson v. United States*, 457 F.2d 1391 (3rd Cir.1972), involved an assault and battery by a non-governmental employee, and thus the analysis of the 2nd Circuit Court of Appeals in *Panella, supra*, would be applicable. In any event, none of those cases was in existence at the time that Idaho adopted the Federal Tort Claims Act in 1971, and therefore, as we pointed out in *Leliefeld*, they are not involved in our determining the legislative interpretation of I.C. § 6–904(4). Furthermore, they have all been displaced by the plurality opinion of the United States Supreme Court in *United States v. Shearer, supra*. As recently observed by the Fifth Circuit Court of Appeals in *Garcia v. United States*, 776 F.2d 116 (1985),

"[W]hile only four Justices in *Shearer* joined the language interpreting the 'arising out of' proviso, the other four Justices did not reject its applicability but joined the decision to reverse on another ground. Such an intervening decision might not be sufficient to free this panel from clear circuit precedent, but it is sufficient to allow our retreat from *Underwood* and its reasoning, now so seriously questioned. We cannot ignore this strong signal .rom the Supreme Court." 776 F.2d at 118.

Thus, it is clear that, both prior to and after 1971, the interpretation placed upon the language "arises out of assault, battery, ...," in Section 2680(h) of the Federal Tort Claims Act refers not only to the intentional torts listed in that subsection, *i.e.*, "assault, battery, false imprisonment, ... misrepresentation," etc., but also to any underlying negligence which may occasion those intentional torts. Accordingly, the "time honored principle" to which we have just paid "unwaivering adherence" in *Leliefeld, supra*, "that a statute which is adopted from another jurisdiction will be presumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction," should be applied in this case also, and the district court should be affirmed. As was recently stated by the United States District Court for South Carolina:

"The plaintiff argues that his claim is not founded upon assault and battery, but rather upon the negligence of the government. Ever since the passage of the FTCA, litigants have tried to circumvent its exceptions by alleging that harm was caused not by the act for which sovereign immunity remained a bar, but rather by antecedent negligence. These attempts generally failed because the courts spoke to the essence of the claim and ignored the attempts of the plaintiff to characterize it in another way." *Taylor v. United States*, 513 F.Supp. 647, 649–50 (D.S.C.1981).

In this case the district court was correct in its conclusion that the plaintiffs' claims arise out of the battery committed by Durtschi and, accordingly, the defendant school district was not liable for those claims. The district court's order awarding summary judgment on that basis was correct and should be affirmed.

SHEPARD, J., concurs.