429 P.2d 419

**J. Argyle JORDAN, Plaintiff-Appellant,**

v.

**C. Kelly PEARCE, Emmette Spraker, and W. H. Jensen, Defendants-Respondents.**

No. 9960.

Supreme Court of Idaho.

June 26, 1967.

J. Argyle Jordan, pro se.

Jones, Pomeroy & Jones, Pocatello, for appellee.

McFADDEN, Justice.

During the 1966 election year, respondent-defendant C. Kelly Pearce declared his candidacy and ran for the office of the Probate Judge of Bannock County while still occupying the appointive office of County Probation Officer of that county. During that year respondent-defendant Emmette Spraker declared his candidacy and ran for the office of Clerk of the District Court of Bannock County while still serving as Chairman of the Board of County Commissioners of that county, an elective office, and respondent-defendant W. H. Jensen declared his candidacy and ran for the office of Representative to the Legislature from the representative district of that county while he still served as Probate Judge of that county, an elective office.

J. Argyle Jordan, appellant herein, brought this action in 1966 to have each respondent declared to be ineligible to be a candidate for the respective office he sought. Appellant brought the action as a resident, taxpayer and elector of Bannock County and also as a candidate for the office of Probate Judge. Inasmuch as each respondent has, since instituting this action, been elected to the office he sought, appellant on this appeal now seeks to have each

respondent removed from his office on the ground that his candidacy was invalid. I.C. § 34–2001(2), § 34–2101(2).

Appellant concedes that each respondent has met the express statutory requirements for eligibility to run for office, such as "age, citizenship, residency, sanity, morality, and freedom from criminal activities," but she contends that each of them was ineligible to run for office without first resigning from his respective public office held while he was a candidate. Respondents admit that they did not resign from their offices and that they campaigned for their newly sought offices while still holding their old positions.

Following filing of appellant's complaint, the respondents filed a motion to dismiss, motion for separate trials and motion to strike. The trial court treated the motion to dismiss as a motion for summary judgment, and entered summary judgment dismissing the cause, from which judgment appellant perfected this appeal. Since the parties have dealt with the problems incident to each respondent separately, we shall do likewise.

## C. KELLY PEARCE

Appellant's first contention is that respondent Pearce was ineligible to run for the office of probate judge while serving as a probation officer because of the provisions of both the state merit or personnel system (I.C. § 67–5311; Merit System Rule XV, § 1, P. 34), and by the Federal Hatch Act, in particular 5 U.S.C.A. § 118k(a) and (f). Both of these statutes, if applicable to Pearce, would prohibit him from taking active part in political campaigns and presumably from running for office.

■■■ Although the District Court in its memorandum opinion determined that respondent Pearce was not subject to the provisions of the law pertaining to the state merit or personnel system or to the Hatch Act, we find it unnecessary to discuss their applicability to Pearce. Neither piece of legislation purports to declare an office holder ineligible to run for another office;

they merely purport to apply sanctions against those who so choose to run. I.C. § 67–5312 provides that anyone subject to the state personnel system who violates the "no politics" rule of I.C. § 67–5311 and the Merit System Rule XV shall be guilty of a misdemeanor. Appellant does not contend that conviction of a misdemeanor would render respondent Pearce ineligible to run for the office of probate judge. Since the legislature provided an express penalty for violation of the "no politics" rule, an additional unexpressed penalty cannot be presumed. State v. Fair Lawn Service Center, 20 N.J. 468, 120 A.2d 233 (1956). The Hatch Act, 5 U.S.C.A. § 118k(b), provides for withholding of federal funds from states that permit violators of the Act to stay in their old jobs in the face of federal demands that they be removed. The Act does not purport to say who is eligible for state office. Since neither the state merit or personnel system nor the Hatch Act gave appellant a cause of action against anyone to have his candidacy declared invalid, it becomes unnecessary to determine whether the two legislative enactments were applicable to respondent Pearce.

Appellant's second contention is that Idaho Const. art. 2, § 1, rendered Pearce ineligible to run for the office of probate judge while still serving as a probation officer. This constitutional provision reads:

"The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

■■■ Although appellant asserts that as probation officer, Pearce was exercising executive powers and that by campaigning for the office of probate judge he was seeking to exercise judicial powers, it is self-evident that merely seeking the office of probate judge as a candidate does not in-

volve the exercise of judicial powers. Appellant further advances the theory that campaigning for office is one of the functions of the office campaigned for. However, merely running for office cannot be considered as exercising a function of that office.

### EMMETTE SPRAKER

Appellant contends that the candidacy of respondent Spraker was invalid because he was seeking the office of Clerk of the District Court while he was still a County Commissioner. She cites Article 8 of the Organic Act of the Territory of Idaho, which provides:

"Members of legislature—Restrictions on holding other public office.—No member of the legislative assembly shall hold or be appointed to any office which shall have been created, or the salary or emoluments of which shall have been increased, while he was a member, during the term for which he was elected, and for one year after the expiration of such term; but this restriction shall not be applicable to members of the first legislative assembly; and no person holding a commission or appointment under the United States, except postmasters, shall be a member of the legislative assembly, or shall hold any office under the government of said territory."

Appellant then reasons that at the time Section 8 was enacted, the territory of Idaho had no counties; that when counties were later formed, county commissioners were delegated some of the powers formerly exercised by the legislative assembly, including the power to fix the salary of the clerk of the district court, and hence the prohibition set forth in the foregoing Section 8 thus applies to county commissioners. Appellant then points out that in the first year of Spraker's latest term of office as a county commissioner, he was instrumental in having the commissioners approve a sizeable salary increase for the clerk of the district court.

Respondent Spraker in turn points out that Section 8 of the Organic Act, supra, was not included in the Idaho Constitution, which however, does provide in Article 21, § 2:

"All laws now in force in the territory of Idaho which are not repugnant to this Constitution shall remain in force until they expire by their own limitation or be altered or repealed by the legislature."

Even assuming that Section 8, supra, did not expire by its own limitation, and further assuming appellant's ingenious extension of that section to apply to county commissioners to be valid, it is our conclusion that the district court correctly determined that the legislature intended to repeal that section by enactment of subsequent legislation covering the same subject. Idaho Const. Art. 21, § 2.

In 1907 the legislature enacted what is now I.C. § 59–102, which prohibits members of the state legislature from being appointed to an office created when said legislator was holding legislative office, under penalty of being found guilty of a misdemeanor and subject to fine in an amount not less that $500 nor more than $5,000. Counties, of course, existed at the time of enactment of I.C. § 59–102, which dealt with the same evil as Section 8 of the Organic Act, although in a somewhat different manner. This evidences an intent to repeal Section 8, if it were still in existence. In 1952, in Extraordinary Session, the legislature enacted an act designated the "Idaho Motor Vehicle Reciprocity Act" which, among other things by I.C. § 49–210, provided that the provisions of I.C. § 59–102 "shall have no application to the provisions of this act * * *." In 1965 the legislature enacted I.C. § 67–4221, pertaining to the "Park Board" and its membership, appointment and terms of members thereof. Subdivision (f) of I.C. § 67–4221 exempted the provisions of that section from the provisions of I.C. § 59–102. Had Section 8 of the Organic Act remained in force during 1952 and 1965, the specific exemptions from the operation of I.C. § 59–102, as contained in I.C. § 49–210 and § 67–4221, would be meaningless. It is our conclusion that even

if enactment of I.C. § 59–102, did not effectively repeal the provisions of Section 8 of the Organic Act pursuant to Idaho Const. Art. 21, § 2, it was accomplished by the enactment of the two "exemption" provisions above mentioned.

"Repeals by implication are not favored; but if inconsistency is found to exist between the earlier and the later enactments, such that the legislature could not have intended the two statutes to be contemporaneously operative, it will be implied that the legislature intended to repeal the earlier by the later enactment." (Citations omitted.) State v. Davidson, 78 Idaho 553, 559, 309 P.2d 211, 215 (1957).

Appellant also contends that Spraker was ineligible to run for the office of clerk of the district court because he was not a qualified elector. However, Idaho Const. Art. 6, § 2, states:

"Except as in this article otherwise provided, every male or female citizen of the United States, twenty-one years old, who has actually resided in this state or territory for six months, and in the county where he or she offers to vote, thirty days next preceding the day of election, if registered as provided by law, is a qualified elector; * * *."

Appellant does not point out any provisions of the constitution which would disqualify Spraker as an elector, nor any facts which reflect any disqualification. I.C. § 34–605 provides in part:

"Any person legally qualified to hold * * * office is entitled to become a candidate for office, * * *."

And I.C. § 59–101 provides:

"Every qualified elector shall be eligible to hold any office of this state for which he is an elector, except as otherwise provided by the constitution."

Appellant has failed to point to any additional qualifications required by the legislature, and hence we must conclude that respondent Spraker was not disqualified from running for office on the ground that he was not a "qualified elector."

It is true that Spraker could not simultaneously hold both the office of county commissioner and clerk of the district court. Technically, therefore, at the time he ran for the office of clerk of the district court he was ineligible to hold that office; but his term of office as county commissioner expired before commencement of his term of office as clerk of the district court. Under Idaho law, a candidate may be elected to an office while under disqualification, provided such disqualification can be and is removed before the new term of office begins. Bradfield v. Avery, 16 Idaho 769, 102 P. 687, 23 L.R.A.,N.S., 1228 (1909). It is only where the disqualification cannot be cured or where the constitution or statutory provision clearly shows an intent that a person be disqualified from seeking election that candidacy or election can be invalidated on the grounds of ineligibility. Bradfield v. Avery, supra, 16 Idaho at 774–776, 102 P. 687, 689.

" * * *. The word 'eligibility' as used in connection with an office or the person to be elected to fill an office has been variously defined by the courts and various constructions given to the use of such word with reference to whether the same applies to the election to office or the induction into office. The authorities upon both sides of this question are cited in 29 Cyc. 1376, and 10 Ency. of Law, pp. 970, 971. We are satisfied that the better reason is with the proposition that where the word 'eligibility' is used in connection with an office, and there are no explanatory words indicating that such word is used with reference to the time of election, it has reference to the qualification to hold the office rather than the qualification to be elected to the office." (Citations omitted.) 16 Idaho at 774, 102 P. at 689.

We conclude that respondent Spraker's candidacy was valid, and that I.C. § 34–2001 which authorized the contest of an election of any person to public office on the

ground: "2. When the incumbent was not eligible to the office at the time of the election", is of no avail to appellant.

## W. H. JENSEN

Appellant contends that respondent Jensen, already holding the office of probate judge, was ineligible to be a state representative when he declared his candidacy for that office thus rendering his declaration of candidacy void. This is the same argument made in reference to respondent Spraker. Bradfield v. Avery, discussed supra, is controlling against appellant here.

Appellant, however, points out that Jensen's term as state representative began December 1, 1966, (Idaho Const. Art. 3, § 3), while his term of office as probate judge did not expire until January, 1967. Appellant cites Section 9 of the Organic Act with the following emphasis:

"Sec. 9. *Territorial Courts—Jurisdiction and Powers.*—The judicial power of said territory shall be vested in a Supreme Court, district courts, probate courts, and justices of the peace. The Supreme Court shall consist of a chief justice and two associate justices, any two of whom shall constitute a quorum, and who shall hold a term at the seat of government of said territory annually and they shall hold their offices during a period of four years, *and until their successors shall be appointed and qualified.* * * *."

Appellant calls attention to the similarity of that provision with Idaho Const. Art. 5, § 2, emphasizing that "The courts shall constitute a unified and integrated judicial system for administration and supervision by the Supreme Court." She then refers to I.C. § 1–702, pointing out that the term of office for a district judge is four years and that when a new district judgeship is created, such judge holds office until the next general election, and "until his successor is elected and qualified." She concludes that by inference these provisions are applicable to probate judges and thus Jensen automatically was ineligible for of-

fice on December 1, 1966, because he had to serve as probate judge until after expiration of his term and until his successor was elected and qualified and could not resign from that position. From the statutory provisions themselves, they are inapplicable to respondent Jensen as probate judge. Sec. 9, Organic Act applied only to justices of the territorial Supreme Court, now extinct, and I.C. § 1–702 applies only to appointed district judges.

 Not only do the statutes fail to prohibit a probate judge from resigning before his term is over, but they expressly permit such resignation. I.C. § 59–901 provides:

"Every civil office shall be vacant upon the happening of either of the following events at any time before the expiration of the term of such office, as follows:

1. The resignation of the incumbent.
2. * * *."

I.C. § 59–902 provides:

"Resignations of civil offices must be in writing, and may be made as follows:

1. * * *.
2. * * * by judges of the Supreme Court and district courts, * * * to the governor.
3. * * *.
4. By all county and precinct officers, to the county board, * * *."

Idaho Const. Art. 18, § 6, and I.C. § 31–2001 enumerate the "county officers" and include the office of probate judge in that category. I.C. §§ 59–905 and 59–906 provide that vacancies in county offices shall be filled by appointment of the county commissioners. See: Annot.: 19 A.L.R. 39, 40. Thus respondent Jensen could resign from his office of probate judge before the end of the term, thus rendering himself eligible to serve in the state legislature.

 Appellant further contends that even if Jensen could resign, he would be ineligible to assume his new position as long

as his unexpired term lasted, citing Idaho Const. Art. 5, § 7:

"No justice of the Supreme Court shall be eligible to any other office of trust or profit under the laws of this state during the term for which he was elected."

We must agree with the trial court's conclusion that this provision is applicable only to justices of the Supreme Court, and not to Jensen as a probate judge. Appellant asserts also that Respondent Jensen violated the canons of judicial ethics (Canon 30, Judicial Ethics) by being a candidate for office of state representative while still serving as a probate judge. However, nothing therein contained creates any disability for one who should violate such canon.

Appellant also claims that respondent Jensen was prevented from running for legislative office while holding a judgeship by Idaho Const. Art. 2, § 1, supra, guaranteeing separation of powers. However, as above held, running for the legislature did not involve the exercise of legislative powers or any powers peculiar to only one branch of government. Appellant's contentions being without foundation, it is our conclusion that respondent Jensen's candidacy was valid.

In her reply brief, appellant claims that several points presented by respondents and considered by this court should not have been so considered in the absence of a cross-appeal by respondents. A careful reading of respondent's brief reflects, however, that the points presented were by way of citations of law, statutes and constitutional provisions, and they presented no issues requiring any cross-appeal.

Appellant also contends in her reply brief that there are material facts which are in dispute and hence entry of summary judgment without trial of the disputed facts is improper. The alleged factual issues were not material to this decision, i. e., whether respondent Pearce was subject to the state merit system or the federal Hatch Act, and hence there was no error in that regard to entry of summary judgment. I.R. C.P. 56(c).

The summary judgment below is affirmed as to all three respondents. Costs to respondents.

TAYLOR, C. J., SMITH and SPEAR, JJ., and BURTON, D. J., concur.