UNITED STATES of America, Plaintiff,

v.

Frank A. ANDRIACCO, Defendant.

No. CR–3–95–065.

United States District Court,
S.D. Ohio,
Western Division.

Oct. 5, 1996.

J. Richard Chema, Asst. U.S. Attorney, Dayton, OH, for Plaintiff.

John Poley, Dayton, OH, for Defendant Frank Andriacco.

Ken Murray, Columbus, OH, for Frank Andriacco and Atty. John Poley.

## DECISION AND ORDER ON CONTEMPT OF COURT

MERZ, United States Magistrate Judge.

This case is before the Court upon the merits of the oral motion by Attorney Ken Murray, as counsel for Attorney John Poley and Defendant Frank Andriacco, to dissolve the Court's Order to Show Cause (Doc. # 9) and dismiss the contempt proceedings against Messrs. Poley and Andriacco commenced thereby. The motion is memorialized by Mr. Murray's letter of October 2, 1996 (in file).[1]

---

1. The letter shows no copy to Assistant United States Attorney J. Richard Chema, but the Court has furnished Mr. Chema with a copy.

On October 26, 1995, this Court entered its Judgment and Commitment finding Mr. Andriacco guilty of two counts of failure to make appropriate records as a federal firearms dealer, Class A misdemeanors carrying potential sentences of one year in prison and a $100,000 fine each. The convictions were pursuant to a Plea Agreement (Doc. # 5) entered into between Mr. Andriacco and the United States at the time the Information was filed. As part of the Plea Agreement, Mr. Andriacco agreed to surrender his Federal Firearms License and never again apply for such a license (Id., ¶ 3). He acknowledged that the State of Ohio might, as a result of the convictions, institute proceedings to prohibit him from engaging in the pawnbroking business; the United States agreed not to voluntarily offer any recommendation to the State in that matter.

After considering a Presentence Investigation Report, the Court on October 13, 1995, sentenced Mr. Andriacco to pay a fine of $2,000; that fine is embodied in the Judgment. Mr. Andriacco paid that amount in lump sum on January 2, 1996.

In the meantime, on November 22, 1995, Mr. Poley commenced a proceeding in the Criminal Division of the Dayton Municipal Court to expunge "all official records of this case." The Application was later refiled in the Civil Division of the Dayton Municipal Court on December 5, 1995. Mr. Poley represented that Mr. Andriacco was working as a pawnbroker and expungement of this conviction would enable him to "work more effectively and ... be able to resolve any internal conflicts with the Department of Commerce, Licensing Division for Pawnshops." Mr. Poley demanded that the Dayton Municipal Court "order the expungement of his records of conviction from all state, **federal** and local law enforcement agencies ..." Mr. Poley gave no notice of the proceeding to this Court or to the United States Attorney; instead, he requested issuance of process to the Dayton Municipal Court Prosecutor (Praecipe; copy in file).

Mr. Poley sought expungement under Ohio Revised Code § 2953.32(A)(1) which provides:

Except as provided in section 2953.61 of the Revised Code, a first offender may apply to the sentencing court if convicted in this state, or to a court of common pleas if convicted in another state or in a federal court, for the sealing of the record of his conviction, at the expiration of three years after his final discharge if convicted of a felony, or at the expiration of one year after his final discharge if convicted of a misdemeanor.

Since the Dayton Municipal Court was not the sentencing court, its Presiding Judge John S. Pickrel transferred the case to the Montgomery County Common Pleas Court on December 12, 1995 (Entry, copy in file). Thereupon the matter was assigned to the Administrative Judge of that Court's General Division, Judge John W. Kessler.

On January 26, 1996, and again on August 22, 1996, Judge Kessler denied the requested expungement without citing any reasons other than that Mr. Andriacco did not in general comply with Ohio Revised Code § 2953.32(C)(1).

Although the Common Pleas record reflects no additional filings by Mr. Poley after August 22, 1996, just two weeks later Judge Kessler issued his Entry Ordering the Sealing of Records of Conviction determining in general terms that Mr. Andriacco now did comply with Ohio Revised Code § 2953.32(C)(1). Judge Kessler then ordered:

... that all official records as defined by O.R.C. 2953.31(D) pertaining to this case[2] be sealed and all indexed references be deleted subject to the provisions of the [sic] O.R.C. 2953.32(F). The proceedings in this case shall be deemed not to have occurred and the conviction of the applicant shall therefore be sealed.

IT IS FURTHER ORDERED that a certified copy of this entry be sent to all law enforcement agencies and other public of-

---

**2.** The reference to "this case" is clearly intended to be a reference to the case of conviction, and not the Common Pleas case in which expungement is being ordered. Apparently the Entry was prepared on a form usually used when the Common Pleas Court is also the court of conviction.

fices or agencies in any way involved in the above captioned proceeding and the records of any such agencies relating to the Defendant and the Defendant's involvement in the offense or offenses in the above captioned case shall be sealed. Said agencies shall not permit the inspection or release of any information or other data concerning any arrests, indictment, trial, hearing, conviction or correctional supervision of the application [sic; "applicant" appears to be intended] herein except as authorized by Division C(2), (D), (E), (F), and (G) of Section 2953.32 of the Ohio Revised Code as now enacted or as may hereinafter be amended.

(Entry, copy in file). The Entry was then served on this Court as the court of original jurisdiction on September 19, 1996, and the Clerk applied to the Court for instructions on whether or not to obey.

On September 24, 1996, I issued the Order to Show Cause suggesting that prosecution of the expungement proceedings was a contempt of this Court in that

1. Mr. Andriacco's "final discharge" did not occur until he paid the fine on January 2, 1996, yet the Application was filed well before the anniversary of discharge, indeed before the fine had been paid.

2. Ohio Revised Code § 2953.32(B) requires notice to the "prosecutor for the case," but Mr. Poley had never given notice to the United States Attorney.

3. Most importantly because the Ohio statute, insofar as it purports to give Common Pleas Courts authority to seal federal records of federal criminal convictions appears to violate the Supremacy Clause. (Order to Show Cause, Doc. # 9, pp. 2–4). I also notified Judge Kessler of my concerns.

On September 30, 1996, Judge Kessler entered two new orders, one vacating the September 14, 1996, Entry [3] and one denying the Application for expungement in the same form as had been entered in January and August, 1996. The new entries do not indicate whether they were entered by Judge Kessler *sua sponte* or on application of Mr. Poley.

Defendant and Mr. Poley argue that these new orders from Judge Kessler render the contempt matter moot and "that there is no case or controversy currently before the Court.... this Court does not have a proper case before it upon which to issue an opinion regarding the Ohio Revised Code § 2953.32." I respectfully disagree.

■ First of all, assuming Mr.· Poley moved to vacate the expungement order, that would constitute a good faith effort to purge himself of any civil contempt; it would not render moot the question whether the initial Application could correctly be adjudged a criminal contempt. See generally *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988).

Secondly, the propriety of a state court order sealing a federal criminal conviction is a question capable of repetition yet potentially evading review and therefore not moot. *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Vacation of the expungement order at this stage may represent merely a concession that it was premature, since the anniversary of final discharge is not until January 2, 1997. Forewarned of this Court's attitude toward the statute, Defendant might well attempt in his next application not to seal federal court records, but merely federal agency records, thereby evading judicial review. Thus the matter is not moot.

■ Insofar as Ohio Revised Code § 2953.32 purports to give the Court of Common Pleas jurisdiction to enter expungement and sealing orders with respect to federal convictions, it violates the Supremacy Clause of the United States Constitution, Art. VI, § 2. The Congress of the United States has the power to punish for crimes, including the crimes to which Mr. Andriacco pleaded guilty. Surely the Ohio General Assembly does not have the power to declare that all

---

**3.** The Entry to Vacate inadvertently refers to Order Sealing Convictions of September 14, 1995, but 1996 is clearly intended.

federal agencies and courts shall treat those crimes as if they had not occurred. As to the sealing of records, it is a commonplace that courts have control of their own records and it is well established that "state courts are completely without power to restrain federal court proceedings in in personam actions...." *Donovan v. Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), citing *United States v. Council of Keokuk,* 6 Wall. 514, 18 L.Ed. 933 (1868); *Weber v. Lee County,* 6 Wall. 210, 18 L.Ed. 781 (1868); *Riggs v. Johnson County,* 6 Wall. 166, 18 L.Ed. 768 (1868); *M'Kim v. Voorhies,* 7 Cranch 279, 3 L.Ed. 342 (1812). Indeed, Defendant and Mr. Poley concede as much when Mr. Murray writes "Any order to a Federal agency to seal a federal record of conviction would have not [sic] force or effect as the Common Pleas Courts of Ohio certainly have no jurisdiction to order a federal agency to seal the records" (Murray letter of October 2, 1996, in file).

While the contempt matter is not moot, the Court finds it is unnecessary to make a contempt finding at this juncture. Mr. Andriacco did nothing in the expungement proceedings independent of his counsel. Mr. Poley acted on the advice of other counsel, including Mr. Murray. They now concede the Common Pleas Court does not have power to issue the order they obtained, at least insofar as it applies to federal courts' and agencies' records. Accordingly, the Order to Show Cause is DISSOLVED. Furthermore, Judge Kessler having vacated the expungement order, the Clerk of this Court need not obey it further.