This matter comes before us upon the filing by Relator, the Mahoning County Prosecutor, of an original quo warranto action seeking this Court to remove the Respondent, Joseph Rossi, from his elected office. For the following reasons we find that Relator is not entitled to the relief he seeks and hereby grant the summary judgment motion filed by Respondent and dismiss the action.
The record before us appears from cross motions for summary judgment filed by Relator and Respondent. In 1988, Respondent Rossi was convicted in the United States District Court for the Northern District of Ohio of attempted tax evasion, a violation of Section 7201, Title 26, U.S. Code. Respondent was sentenced to three years probation and fined ten-thousand dollars ($10,000.00). There is no question that, by its own terms, a violation of 26 U.S.C. § 7201 is classified as a felony.
On November 4, 1997, Respondent was elected to the position of Village of Lowellville Councilman in the general election. The election results were certified November 26, 1997 and Respondent assumed his elected office in January of 1998.
On March 11, 1998, Relator instituted the within action seeking to remove Respondent from office pursuant to R.C. § 2961-01, which curtails the civil rights of persons convicted of a state or federal felony. Subsequently, on March 25, 1998, Respondent applied to the Mahoning County Common Pleas Court to seal his record of conviction pursuant to R.C. § 2953.32(A)(1). Said application was granted July 23, 1998 and the common pleas court ordered that copies of this entry be sent to several state and local authorities.
In their filings before this Court the parties have essentially stipulated to all of the above. On June 1, 1998, prior to the granting of the application to seal Respondent's criminal records, Relator filed a motion for summary judgment. Respondent replied by way of a motion in opposition on June 28, 1998, over a month after the application was granted. Respondent supplemented his motion in opposition on August 4, 1998 and, in response, Relator filed yet another motion for summary judgment on August 24, 1998, addressing issues raised by the granting of the application to seal. On September 4, 1998, Respondent filed his motion opposing the second request for summary judgment and filed his own motion seeking summary judgment.
Inasmuch as both parties have come to the Court averring that there are no questions of material fact at issue here and that the matter revolves solely around a question of law, and they appear to have stipulated to the pertinent facts herein, we will proceed to an analysis of the parties' arguments.
Relator correctly argues that R.C. § 2961.01 serves to strip a convicted felon of his ability to hold public office. This section stated at the time of Respondent's conviction that:
 "A person convicted of a felony under the laws of this or any other state or the United States, unless his conviction is reversed or annulled, is incompetent to be an elector or juror, or to hold an office of honor, trust, or profit. When any such person is granted probation, parole, or a conditional pardon, he is competent to be an elector during the period of probation or parole or until the conditions of his pardon have been performed or have transpired, and thereafter following his final discharge. The full pardon of a convict restores the rights and privileges so forfeited under this section, but a pardon shall not release a convict from the costs of his conviction in this state, unless so specified."
While this section has been amended in 1998, it remains unchanged in any way significant to this matter.
Relator's position is that this section serves to strip Respondent of his ability to hold elected office forever unless he obtains a full pardon of his conviction. Since Respondent was convicted of a federal felony, Relator argues that this pardon may only be obtained from the President of the United States. Relator claims that, because R.C. § 2961.01 is the statute which removes Respondent's civil rights and this section provides a remedy within it, this remedy is the sole means of having one's civil rights restored from a federal felony conviction.
Relator also claims that the application to seal Respondent's criminal record which was granted by the common pleas court is of no force and effect. Relator's argument is that because the expungement statute purports to allow a state court to seal the records of a federal conviction, the Supremacy Clause of the U.S. Constitution renders this action null and void. He asserts that the state court has no power or ability to order the federal courts to perform any act, including the act of sealing the record of a federal conviction.
As earlier stated, R.C. § 2961.01 would, absent other action, bar Respondent from holding elected office. There is no disagreement by either party as to this point. It is equally apparent from the record that Respondent was and is competent to be an elector of the state. Respondent was sentenced to three years of probation. The statute removes the right to be an. elector of the state upon felony conviction unless or until that convicted felon is granted probation. The statute states that: "[w]hen any such person is granted probation . . . he is competent to be an elector during the period of probation . . . and thereafter following his final discharge."
In order to be a candidate for office, Respondent needed to be an elector. R.C. § 705.12 states in part that, "[m]embers of the legislative authority of a municipal corporation shall be electors of the municipal corporation." The Village of Lowellville is a "municipal corporation," which, because of its population, is classified as a "village." R.C. § 703.01. No party has brought before us any further qualifications mandated by the village which impact on this matter. Thus, absent his felony conviction, Respondent appears otherwise qualified to hold office.
The record is clear that Respondent has not obtained a presidential pardon of his conviction. R.C. § 2961.01 does provide that, "[t]he full pardon of a convict restores the rights and privileges so forfeited under this section . . .". Apparent support for Relator's position that this remains the sole remedy for this forfeiture is found in Hughes v. State ofOhio, (Mar. 26, 1992), Franklin App. Nos. 91-AP-1167, 91-AP-1168, unreported, reversed on other grounds (1993),67 Ohio St.3d 429, where the Franklin County Court of Appeals does state that:
 "Pursuant to R.C. 2961.01, a full pardon of a convict is the only way to restore the rights and privileges forfeited under this section."
In Hughes, the convicted federal felon sought an order requiring that former governor Celeste consider his application for pardon of his federal conviction under R.C. § 2961.01 on the same basis as the governor would consider an application of an Ohio felon. While the common pleas court so ordered, this ruling was reversed on appeal. Hughes, supra. The appellate court began its analysis by citing Section 4, Article V of the Ohio Constitution which reads:
 "The General Assembly shall have the power to exclude from the privilege of voting, or of being eligible to office, any person convicted of a felony."
From this, the court reasoned that the legislature had the power to enact R.C. § 2961.01 which bars someone convicted of a state or federal felony from voting, in some instances, and from holding office. Hughes, supra. In further analyzing this particular section, the court went on to state that under thissection, a pardon is the only curative measure, however, while the state constitution grants the governor power to issue pardons, this power is limited to pardons of Ohio convictions.Id. at 3. The Hughes court found that because his power is derived from the Ohio Constitution, the governor is not able to pardon federal felony convictions. Id. at 4.
It is important to understand that while the Hughes court specifically held that pardon was the only remedy to be found in or derived from R.C. § 2961.01, the Hughes court was not asked to address nor did it address the possibility that remedies for the forfeiture of civil rights may be found elsewhere in the Ohio Revised Code.
Respondent applied to the common pleas court for an expungement pursuant to R.C. § 2953.32. This section states, in pertinent part:
 "(A)(1) Except as provided in section 2953.61 of the Revised Code, [which pertains to multiple offenses with different dispositions] a first offender may apply to the sentencing court if convicted in this state, or to a court of common pleas if convicted in another state or in a federal court, for the sealing of the conviction record. Application may be made * * * at the expiration of one year after final discharge if convicted of a misdemeanor."
This section then requires the common pleas court (in the case of a federal offender) to hold a hearing on the matter. R.C. § 2953.32(B). A prosecutor has the ability to express specific objections to the application and these objections must be considered. R.C. §§ 2953.32(B) and (C) (1) (d). In order to grant the application, the court, among other things, must find that "the applicant has been rehabilitated to the satisfaction of the court," R.C. § 2953.32(C) (1) (c). The court must also find that the applicant's interests in having the records of conviction sealed outweigh the interests of the government in maintaining the records, R.C. § 2953.32(C) (1) (e).
If the court, after weighing these factors, makes the determination that the application should be granted, the court, "shall order all official records pertaining to the case sealed * * * The proceedings in the case shall be considered not to have occurred * * *". R.C. § 2953.32(C) (2). There are certain exceptions for school districts and their employees, and records are not sealed to all persons or for all purposes. R.C. §§ 2953.32(D); (E); (G). For instance, they may be unsealed for sentencing purposes if the felon commits another offense. R.C. §§ 2953.32(D) and (E). Also, law enforcement personnel, parole officers and prosecutors may inspect sealed records for certain purposes not pertinent to the present matter. R.C. § 2953.32(D). Thus, the "expunged" records are not literally erased. Rather, this section sets up a legal fiction; that a convicted felon will be able to treat the conviction as though it had never happened even though the actual records still exist, albeit under a qualified seal.
One of the effects of this sealing of a felony conviction is found at R.C. § 2953.33. Part A of this sections states that:
 "Except as provided in division (G) of section 2953.32 of the Revised Code, an order to seal the record of a person's conviction restores the person who is the subject of the order to all rights and privileges not otherwise restored by termination of sentence or probation or by final release on parole."
In fact, "unless the question bears a direct and substantial relationship to the position for which the person is being considered," a person who has had his records sealed may not even be questioned about the conviction on an employment, licensing or any other application or when appearing as a witness. R.C. § 2953.33(B).
By its own terms, R.C. § 2953.32 purports to restore all civil rights to a federal felon who has had his application for sealing of the records granted. By its own terms, this section purports to seal not only Ohio criminal conviction records which can be found within the care, custody and control of Ohio agencies, but it also allows for the sealing of any other state or federal criminal conviction records. At first blush, this statute appears to overstep its constitutional limits.
The United States District Court for the Southern District of Ohio opined just that. In U.S. v. Andriacco, (S.D. Ohio 1996),942 F. Supp. 1157, Andriacco was convicted on federal firearms violations in federal court. He subsequently applied to an Ohio court for expungement pursuant to R.C. § 2953.32. His application was filed long before the three year period after final discharge provided in this statute. Despite the apparent untimeliness of the request, the application was granted and the trial court ordered that the records of "all law enforcement agencies and other public offices or agencies in any way involved" in the federal conviction be sealed. The entry was mailed to the federal district court at which point the federal judge filed a contempt action against Andriacco and his lawyer ordering them to show cause why they should not be held in contempt based on the expungement order.
The federal court listed three reasons why contempt may have occurred. First, the filing before the state court was untimely. Id. at 1158. Next, the federal prosecutor had not received notice by the state court. Id. at 1159. Lastly and more importantly to the federal court, "because the Ohio statute, insofar as it purports to give Common Pleas Courts [sic] authority to seal federal records of federal criminal convictions appears to violate the Supremacy Clause." Id. at 1159 (citation omitted). While grant of the application was subsequently vacated and the application dismissed by the state court, the federal court proceeded to rule on the contempt action and discuss the effect of R.C. § 2953.32. It held:
 "Insofar as Ohio Revised Code § 2953.32 purports to give the Court of Common Pleas jurisdiction to enter expungement and sealing orders with respect to federal convictions it violates the Supremacy Clause of the United States Constitution, Art. VI, § 2. The Congress of the United States has the power to punish for crimes, including the crimes to which Mr. Andriacco pleaded guilty. Surely the Ohio General Assembly does not have the power to declare that all federal agencies and court shall treat those crimes as if they had not occurred. As to the sealing of records, it is a commonplace that courts have control of their own records and it is well established that state courts are completely without power to restrain federal court proceedings in personam actions.' Donovan v. Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), [citations deleted] Indeed, Defendant and Mr. Poley concede as much when Mr. Murray writes 'Any order to a Federal agency to seal a federal record of conviction would have not [sic] force or effect as the Common Pleas Courts of Ohio certainly have no jurisdiction to order a federal agency to seal the records' (Murray letter of October 2, 1996, in file)."
Andriacco, 942 F. Supp. at 1159-1160.
If the intent of R.C. § 2953.32 is for Ohio courts to order federal courts to seal records, then certainly this section violates the Supremacy Clause. However, other state and even federal courts have interpreted the meaning and intent of the section differently.
Seven years prior to Andriacco, the United States District Court for the Northern District of Ohio addressed the issue inSchwab v. Gallas (N.D. Ohio 1989), 724 F. Supp. 509 which was not addressed in Andriacco. The Northern District Court took a decidedly different view of Ohio's expungement statute. Schwab attempted to file his application for sealing of the records of his federal conviction pursuant to R.C. § 2953.32 naming both state and federal agencies on the face of the application. While he filed in state court, the federal officials had the hearing on the application removed to federal court. The federal district judge dismissed the matter as to the federal officials named in the application, but remanded the matter back to the state courts leaving as a defendant the Ohio Bureau of Criminal Identification and Investigation, also named as a keeper of the records of Schwab's federal conviction. Id. at 510. In so doing, the court addressed the issue of the Supremacy Clause:
 "However inartfully drafted, Section 2953.32
cannot be construed as affecting federal records either maintained or in the custody of federal officers. If this interpretation were true, the Court agrees with Defendants that the state statute would conflict with the express statutory duty of federal officials, under 28 U.S.C. § 534(a)(1) 'to acquire, collect, classify, and preserve' criminal records. Thus, it would violate the Supremacy Clause, U.S. Const. Art. VI, cl. 2, and be unconstitutional as applied. Prudence and comity require the Court to avoid a constitutional ruling when possible. The federal statute further provides that the Attorney General shall exchange such records and information with and for the official use of, authorized officials of the Federal Government, the States, cities, and penal and other institutions.' 28 U.S.C. § 534(a)(4). The language does not require the State to preserve this information. What the States do with their records and information received concerns the States, not the federal courts."
Id.
Thus, the federal court found that it was without the ability to grant a federal expungement, but remanded the matter to the state common pleas court to determine whether expungement was warranted under Ohio statute. Id. at 511. The district court was very clear that while the Ohio judge had likewise no ability to seal federal records in the control of federal officials, the state court did retain the power to seal federal records under the control of state officials. Id. at 510-511.
We agree with the reasoning of the Schwab court. If the matter before us presented a simple issue as to whether the state court may order the federal government to seal federal records, the answer would be a resounding "no." This is not the issue before us. Respondent did not attempt to order federal officials to seal his felony records. The common pleas court order goes to great lengths to name only state and local officials when it lists the entities to be served with and affected by this order. The question to be resolved is whether R.C. § 2953.32 may lawfully operate to seal Respondent's records of felony conviction for purposes of Ohio law when the conviction was not obtained within Ohio. The Ohio Supreme Court has answered this question in the affirmative.
In Barker v. State (1980), 62 Ohio St.2d 35, Barker sought to have his West Virginia records of conviction sealed for Ohio purposes under R.C. § 2953.32. West Virginia does not provide for expungement in a similar fashion as provided by Ohio in this section. As the Barker Court was dealing with the records of a conviction in another state as opposed to those of the United States, the Full Faith and Credit Clause and not the Supremacy Clause was at issue.
The Barker Court began by reviewing the Full Faith and Credit Clause and the congressional act interpreting the clause. Section 1, Article IV to the United States Constitution states in part that, "Full faith and credit shall be given in each State to the Public Acts, Records and judicial Proceedings of every other State." Congress provided further classification by enacting 28 U.S.C. § 1738 (the following), stating that judgments, ". . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."
The Barker Court then analyzed the law surrounding the Full Faith and Credit Clause and its exceptions. Noting the United States Supreme Court's holding that a strict reading of this clause may serve to foil interests which are fundamental to state sovereignty, the Ohio Supreme Court analogized the issue to the rule of law which allows that criminal punishment be meted out in the jurisdiction in which the crime was committed, the lex loci delictus. Id. at 38. The Court reasoned that, as Full Faith and Credit Clause does not require state courts to accord full faith and credit to out of state criminal judgments, it should not apply to interfere with Ohio's expungement of an out of state criminal conviction. Id. at 39-40. Further, the Ohio Supreme Court found that this clause was not applicable to require Ohio to apply the law of West Virginia to the expungement proceeding, reasoning that each state has the authority to enact and apply their own laws within their own borders consistent with the requirements of due process. Id. at 40. Thus, in order to challenge the statute allowing criminal records to be sealed, one would have to prove that the conflicting interests of the other state are superior to Ohio's interests in enacting the law. Barker,62 Ohio St.2d at 41. Here, the Court held that the expungement statutes were enacted to provide remedial relief to first time criminals who have rehabilitated themselves to the satisfaction of the courts so that they may play a more meaningful and productive role in society. Id.
Lastly, Barker dealt with the issue that confronts us in our present matter. The state challenged Barker's request to seal records of a West Virginia conviction on the basis that the Ohio court was without the power to force governmental officials of another state to perform any act, including sealing criminal records pursuant to an Ohio law. Id. at 41-42. In language similar to the federal district court pronouncement in Schwab, supra, the Court stated:
 "A review of the pertinent statutory provisions demonstrates that the expungement language scheme is indeed imprecise with regard to the manner in which the courts are to perform their statutory duty. It is not, however, the function of this court to rewrite the enactment. Instead, it must be presumed that the General Assembly intended for these statutes to comport with the Constitution. Furthermore, these remedial provisions are to be liberally construed to promote their purposes. R.C. 1.11; see State v. Sinito (1975), 43 Ohio St.2d 98, 101, 330 N.E.2d 896. Accordingly. we conclude that the provisions of R.C. 2953.31 et seq., which refer to the expungement of a record of conviction, require only the expungement of those records located within the territorial boundaries of this state."
Id. at 42 (footnotes omitted).
The common pleas court herein specifically relied onBarker in granting Respondent's application. While the effect of the Supremacy Clause as it pertains to the preemption of Ohio law by a conflicting federal law is certainly different from the Full Faith and Credit Clause which defines the states' relationships to and with each others' respective judgments, the basic question upon which this matter hinges is the same. The Ohio legislature has a right, in the interest of self government, to enact laws for the benefit and protection of its citizens and to determine what those interests may be. The legislature has no ability to force this legislation on other states or, of course, on the federal government. The statute, by its own terms, sets up a fiction whereby the record will cease to exist after it is sealed except in the case of one of a litany of statutory exceptions. It also sets up a fiction whereby, for an out of state or federal conviction, the record is sealed except in the convicting jurisdiction. The record is sealed and the conviction is to be treated as though it never occurred for state purposes only. See also Application of LarryPacifico (Sept. 18, 1988), Montgomery App. No. 16768, unreported.
Pursuant to R.C. § 2961.01, a convicted federal felon has his right to vote removed until he is granted probation and has this ability to hold pubic office removed. This section provides a remedy; full pardon. The remedy provided by R.C. §2961.01 does not state that it is exclusive. R.C. § 2953.32, which provides a first time offender with an expungement proceeding would also apply, then, to restore those rights forfeited by operation of R.C. § 2961.01 without explicit language to the contrary within the latter section. A first-time federal felon could apply for and receive an expungement of Ohio records pertaining to his federal conviction and, by operation of the specific language in R.C. §2953.33(A), be restored, ". . . to all rights and privileges not otherwise restored by termination of sentence or probation or by final release on parole." This section is written broadly, encompassing all forfeited rights. Because this section is written to restore all rights and R.C. § 2961.01
does not explicitly state that pardon is the only means of restoring the right to hold public office, reading these sections in pari materia requires us to reach the conclusion that an order to seal the criminal record of a federal felon operates to restore his or her ability to hold a public office.
We would caution that there are statutes which would bar this relief to a person with a criminal conviction. One such example is found in R.C. § 2921.41. This statute, in very explicit terms, states:
 "A public official or party official who is convicted of or pleads guilty to theft in office is forever disqualified from holding any public office, employment, or position of trust in this State."
R.C. § 2921.41(C) (1).
The meaning and intent of this section is clear and cannot be superseded by the more broad and general language of the expungement statutes. Barring this direct prohibition, we must give meaning and effect to R.C. §§ 2953.32 and .33 and conclude that Respondent herein has removed his impairment and may hold office.
An additional question arises as to the timing of the application to seal criminal records and the order granting that application. It is clear that R.C. § 2961.01 applied to prohibit Respondent from holding office at the time he was a candidate and was then elected to said office. It was only several months later, upon the issuance of the order, when Respondent was restored his rights and privileges of citizenship. Neither party herein has raised this issue, nonetheless we must address this matter as it has a direct bearing on the outcome of this matter.
In State ex rel. Fisher v. Brown (1972), 32 Ohio St.2d 23, the Court considered a mandamus sought to bar an officer in the Navy from being a candidate for Ohio elected office. The Court acknowledged that if elected, the candidate's position in the Navy may run afoul of the language found in Section 4, ArticleII of the Ohio Constitution which states that, "No person holding office under the authority of the United States . . . shall be eligible to, or have a seat in, the General Assembly. . . ." Id. at 26-27.
However, the Court dismissed the action ruling that while it was too soon to address the speculative question as to whether this operated to keep the candidate from holding office, it was no bar to his candidacy. Id. at 27. They held:
 "Our conclusion is in conformity with the overwhelming majority rule that if the constitutional language does not specify that certain enumerated disqualifications for office extend to a candidacy for that office, a court will not so extend them by construction. State, ex rel. Dostert, v. Riggleman (W.Va. 1972), 187 S.E.2d 591, and cases cited at 595; Jordan v. Pearce (1967), 91 Idaho 687, 429 P.2d 419."
Id.
Some years later, in State, ex rel. Vana v. Maple Hts. CityCouncil (1990), 54 Ohio St.3d 91, the Supreme Court was again faced with a disqualification from office issue in ruling on a mandamus and quo warranto action sought to find certain city charter provisions listing disqualifications for elected office to be unconstitutional. In Vana, the question as to what course of action is followed once a person with some disqualification is elected to and actually holds office was ripe for decision. The person in question was elected in 1987 as a city councilman while at the same time employed by the school board. Pursuant to Maple Heights City Charter, this employment disqualified him from office. The mandamus and quo warranto seeking his removal was filed at some point during his successful reelection bid. In ruling that the councilman must be removed, the Court held:
 Therefore, Section 4, Article III of the Maple Height City Charter is constitutional and respondent Zgrabik cannot serve as a member of the council unless he resigns his position of public employment. Under general Ohio election laws, a candidate for public office need not be qualified in order to run for that office, but must remove any disqualification immediately upon assuming the office; otherwise, the officeholder forfeits that office. Since Zgrabik failed to remove his disqualification, his council seat should be declared vacant and forfeited. See, generally, State, ex rel. Fisher v. Brown (1972), 32 Ohio St.2d 23, 61. O.O. 2d 190, 289 N.E.2d 349."
Id. at 94.
In looking at the matter before us, the question becomes whether Respondent removed his disqualification "immediately upon assuming the office." Under a strict interpretation of the definition of the word "immediately," Respondent would probably not survive this question. We cannot say that a period of seven months, from January until the end of July, 1998 is a period "without interval of time: STRAIGHTWAY" as defined in Merriam-Webster's Collegiate Dictionary (1988), 579. In reviewing the history of the matter, it does appear that Respondent's actions comport with the secondary definition of "immediately" also found in Merriam-Webster's, "as soon as."Id.
The record reflects that Respondent took office in January of 1998. At some point thereafter, Relator made a request of the Ohio Attorney General for an opinion in this matter. The Attorney General released Opinion #98-013 on March 4, 1998, which stated that a convicted felon could not hold office unless he or she undertook statutory curative measures. 1998 Ohio Atty. Gen. Ops. No. 98-013. It is undisputed that both Relator and Respondent were awaiting this opinion before taking further action. Thereafter, Relator filed this quo warranto action and Respondent filed his application to seal his criminal records with the trial court on March 25, 1998. In July the court granted Respondent's application.
While we are disturbed that Respondent waited almost three months after taking office to cure his defect in holding that office, we cannot say that this action should turn on a race to see which party files first. Respondent could have acted more responsibly and taken action to remove his disqualification as one of his first actions upon attaining the office he sought. However, as Respondent did act within a reasonably short period to cure his disqualification and given that we understand the time constraints involved in the legal process, we must find that under the facts before us Respondent removed his disqualification in a timely fashion and without unreasonable or unnecessary delay.
Based on all of the foregoing, we find that an order to seal criminal records pursuant to R.C. §§ 2953.32 and .33 operates to remove the forfeiture of the right to hold office fould at R.C. § 2961.01. No appeal was taken from the expungement order and it is then presumed valid. As Respondent has a valid expungement order, he is not disqualified from holding office. We hereby grant Respondent's motion for summary judgment, overrule Relator's corresponding motions and dismiss the action.
Costs taxed against Relator.
Final order. Clerk to serve notice of this order as provided by the civil rules. VUKOVICH, J., concurs; see concurring opinion. COX, J., dissents; see dissenting opinion.
 ________________________ HON. CHERYL L. WAITE
 ________________________ HON. JOSEPH J. VUKOVICH
 ________________________ HON. EDWARD A. COX