**UNITED STATES of America,
Plaintiff,**

v.

**Frank A. ANDRIACCO, Defendant.**

**No. CR–3–95–065.**

United States District Court,
S.D. Ohio,
Western Division.

Nov. 10, 1999.

J. Richard Chema, Dayton, OH, for Plaintiff.

John D. Poley, Kenneth F. Murray, Dayton, OH, for Defendant.

**DECISION AND ENTRY DISMISSING APPEAL FROM UNITED STATES MAGISTRATE JUDGE'S OCTOBER 7, 1996, DECISION AND ORDER OF CONTEMPT (DOC. # 10), WHICH DISSOLVED MAGISTRATE JUDGE'S PRIOR ORDER TO SHOW CAUSE (DOC. # 9); TERMINATION ENTRY**

RICE, Chief Judge.

This matter comes before the Court upon an appeal by Defendant Frank A. Andriacco and his attorney, John Poley, Esq., from an Order of the United States Magistrate Judge, sustaining their Motion to Dissolve a Show Cause Order. For the reasons set forth below, the Court concludes that Andriacco and Poley are not "aggrieved" persons with standing to pursue the present appeal. Accordingly, the appeal will be DISMISSED, for lack of subject matter jurisdiction.

## I. *Factual and Procedural Background*

On October 26, 1995, the Magistrate Judge sentenced Andriacco on two misdemeanor counts of failure to maintain appropriate records as a firearms dealer. On December 5, 1995, Andriacco's counsel, John Poley, filed an application in state Municipal Court to have that conviction expunged. Andriacco's application later was transferred to the Montgomery County (Ohio) Court of Common Pleas. The application sought expungement of Andriacco's "records of conviction from all state, federal and local law enforcement agencies...." · After twice denying Andriacco's expungement request, the state court judge issued an order sealing the records of his federal conviction. On its face, the order requires both state and federal officials and agencies to comply with its terms.

The Magistrate Judge subsequently filed a September 24, 1996, Order to Show Cause (Doc. # 9), directed toward Andriacco and Poley. In his Order, the Magistrate Judge expressed concern that the two men had attempted to interfere with the administration of federal justice by seeking, and obtaining, the state court expungement order. (Doc. # 9 at 1). The Magistrate Judge cited three reasons for his concern: (1) Andriacco had sought expungement approximately one month after his conviction, even though Ohio's expungement statute, Ohio Revised Code § 2953.32, only permits such an application "at the expiration of one year after [a defendant's] final discharge if convicted of a misdemeanor"; (2) Andriacco had failed to provide notice to the "prosecutor for the case," here the Assistant United States Attorney, as required by the statute; and (3) the state court expungement ruling raised "grave constitutional questions" by purporting to seal the records of federal agencies and federal courts. (*Id.* at 2–3).

In light of these concerns, the Magistrate Judge ordered Andriacco and Poley to appear in court and to show cause why they should not be held in civil and/or criminal contempt. (*Id.* at 4).

Prior to the contempt hearing, however, Andriacco and Poley made an oral Motion to Dissolve the Magistrate Judge's Show Cause Order.[1] In an October 7, 1996, Decision and Order on Contempt of Court (Doc. # 10), the Magistrate Judge *sustained* the appellants' Motion and dissolved his prior Show Cause Order.[2] (*Id.* at 6). In so doing, the Magistrate Judge rejected the appellants' argument ·that the contempt issue was moot. Although the state court had vacated its entry sealing the records of Andriacco's conviction, the Magistrate Judge reasoned that his premature application, without notice to the federal prosecutor, could itself support a finding of contempt. (*Id.* at 4). The Magistrate Judge also expressed concern that "the propriety of a state court order sealing a federal criminal conviction is a question capable of repetition yet potentially evading review and therefore [is] not moot." (*Id.* at 5). As a result, the Magistrate Judge proceeded to analyze the constitutionality of Ohio's expungement statute, finding the statute unconstitutional, insofar as it purports to allow state courts to order federal agencies and federal courts to seal their own records. (*Id.* at 5). In conclusion, the Magistrate Judge stated:

> While the contempt matter is not moot, the Court finds it unnecessary to make a contempt finding at this juncture. Mr. Andriacco did nothing in the expungement proceedings independent of his counsel. Mr. Poley acted on the advice of other counsel.... They now concede the Common Pleas Court does not have power to issue the order they obtained, at least insofar as it applies to federal courts'· and agencies' records.

---

1. The Motion was memorialized by an October 2, 1996, letter from counsel for Andriacco and Poley to the Magistrate Judge.

2. For the full text of the Magistrate Judge's ruling, see *United States v. Andriacco*, 942 F.Supp. 1157 (S.D.Ohio 1996) (Merz, M.J.).

Accordingly, the Order to Show Cause is DISSOLVED....

(*Id.* at 6).

Andriacco and Poley subsequently filed a timely notice of appeal from the Magistrate Judge's October 7, 1996, Decision and Order. Although they do not challenge the Magistrate Judge's dissolution of his Show Cause Order, Andriacco and Poley *do* contest his ruling regarding the constitutionality of Ohio's expungement statute. In support, they argue that the Magistrate Judge: (1) lacked jurisdiction to enter the Show Cause Order, because no "case or controversy" existed; (2) lacked jurisdiction to enter the Show Cause Order, because the contempt issue was moot; (3) lacked jurisdiction to enter the Show Cause Order, because he possesses no contempt power; and (4) erroneously concluded that Ohio Revised Code § 2953.32 is unconstitutional. Andriacco and Poley also argue that the Magistrate Judge's ruling is prejudicial, because it puts them on notice of his "attitude toward the statute" and constitutes a veiled warning not to seek expungement a second time.

## II. *Analysis*

▉ Upon review, the Court concludes that the appellants lack standing to pursue the present appeal.[3] "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge*

---

**3.** For reasons to be set forth, *infra*, the present appeal must be dismissed because the appellants are not "aggrieved" parties with standing to invoke this Court's appellate jurisdiction. Despite this conclusion, the Court pauses briefly to address their arguments concerning the Magistrate Judge's purported lack of jurisdiction to enter his Order to Show Cause. In their first argument, Andriacco and Poley suggest that no "case or controversy" existed when the Magistrate entered his Show Cause Order, because he already had instructed the Clerk of Courts not to comply with the state court expungement ruling, thereby "nullify[ing] any issue that might arguably have existed...." (Doc. # 15 at 7). The Court finds this argument meritless. The Magistrate Judge's decision not to comply with the state court order did not preclude the possibility of finding Andriacco and Poley in contempt for seeking and obtaining such an order. For a similar reason, the Court finds the appellants' second argument equally unpersuasive. The state court judge's decision to vacate his expungement order did not render the contempt issue moot. As the Magistrate Judge properly noted, Andriacco and Poley remained subject to a potential contempt finding because they filed the premature application for expungement, without notice to the federal prosecutor. The Court also finds unpersuasive the appellants' argument that the Magistrate Judge entered his Show Cause Order without the statutory authority to do so. In support of their argument, the appellants rely upon 28 U.S.C. § 636(e). As the appellants properly note, that statute *does not* permit a Magistrate Judge to conduct a show cause hearing or to make a contempt finding. *See, e.g., Bennett v. General Caster Service of North Gordon Co., Inc.,* 976 F.2d

995, 998 n. 7 (6th Cir.1992) ("We note that Congress specifically withheld from magistrate judges jurisdiction over contempt proceedings."). Notably, however, the statute *does* allow a Magistrate Judge to "serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt...." 28 U.S.C. § 636(e). Thus, the Magistrate Judge possessed the express statutory authority to enter his Order to Show Cause. In opposition to this conclusion, Andriacco and Poley argue that the Magistrate Judge had no authority to conduct his own contempt hearing. They also argue that he improperly brought the parties before him, via a telephone conference call. (Doc. # 15 at 10). Although the Court agrees that 28 U.S.C. § 636(e) does not authorize a Magistrate Judge to hold a contempt hearing, no such hearing was held in the present case. Rather, as noted above, the Magistrate Judge merely issued a Show Cause Order, as authorized by the statute. Furthermore, the Magistrate Judge appears to have convened the telephone conference call in order to address the appellants' Motion to Dissolve the Show Cause Order. The appellants fail to explain how or why the Magistrate Judge lacked jurisdiction to rule upon their Motion. For the foregoing reasons, the Court concludes that the Magistrate Judge possessed the jurisdiction to enter both his Show Cause Order (Doc. # 9) and his subsequent Decision and Order on Contempt of Court (Doc. # 10).

Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Standing, a related doctrine, is a jurisdictional issue, and it "requires that a party have an actual injury or claim." *McCafferty v. Centerior Service Co.*, 188 F.3d 508, 1999 WL 644157 (6th Cir.1999); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). " 'In evaluating a party's standing the court must determine whether the party has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. Standing may be a bar to an appeal even though a litigant had standing before the [trial] court.' " *McCafferty*, quoting *United States v. Van*, 931 F.2d 384, 387 (6th Cir.1991) (internal quotations and citations omitted).

 In other words, a party must be "aggrieved" by a judgment in order to have standing to challenge that judgment upon appeal. *HCA Health Services of Virginia v. Metropolitan Life Ins. Co.*, 957 F.2d 120, 123 (4th Cir.1992). "It is a fundamental principle of jurisprudence that '[a] party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree.' " *In re O'Brien*, 184 F.3d 140, 141 (2nd Cir.1999), quoting *Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242, 59 S.Ct.

860, 83 L.Ed. 1263 (1939); *see also Abbs v. Sullivan*, 963 F.2d 918, 924 (7th Cir.1992) ("[A] winner cannot appeal a judgment merely because there are passages in the court's opinion that displease him—that may indeed come back to haunt him in a future case."); *McCafferty v. Centerior Service Co.*, 188 F.3d 508, 1999 WL 644157 (6 th Cir.1999) ("If an appellant is complaining not about a judgment but about a finding ... the appeal does not present a real case or controversy.").

 In the present case, Andriacco and Poley argue that the Magistrate Judge's finding regarding the constitutionality of Ohio Revised Code § 2953.32 was not necessary to support his dissolution of the Show Cause Order. They also argue that the Magistrate Judge has tipped his hand regarding the constitutionality of the expungement statute, and that his "attitude" has caused them to fear seeking another expungement order. Upon review, the Court finds these arguments insufficient to confer Article III standing upon the appellants. The appellants do not challenge the Magistrate Judge's judgment dissolving his Show Cause Order. Rather, the appellants argue that his finding regarding the constitutionality of § 2953.32 was erroneous dicta. As noted above, however, "a winner cannot appeal a judgment merely because there are passages in the court's opinion that displease him—that may indeed come back to haunt him in a future case." *Abbs*, 963 F.2d at 924.[4]

4. An exception to this rule arises when a prevailing party seeks to appeal a finding that might have collateral estoppel effect. *McCafferty*, 1999 WL 644157 at *1, citing *Warner/Elektra/Atlantic Corp. v. County of DuPage*, 991 F.2d 1280, 1282–1283 (7th Cir. 1993). Notably, however, the doctrine of collateral estoppel will not apply to the Magistrate Judge's ruling regarding the constitutionality of Ohio's expungement statute. That doctrine applies only when four conditions are met: (1) the issue involved in subsequent litigation is identical to the issue resolved in earlier litigation; (2) the issue must have been actually litigated and decided in the pri-

or action; (3) the issue must have been necessary and essential to a judgment on the merits in the prior litigation; and (4) the party to be estopped must have been a party to the prior litigation. *United States v. Real Property Known and Numbered as 415 E. Mitchell Ave.*, 149 F.3d 472, 476 (6th Cir. 1998). In the present case, the Magistrate Judge entered an Order dissolving his prior Show Cause Order. In that ruling, the he opined about the constitutionality of Ohio Revised Code § 2953.32. Given that the Magistrate Judge *did not* find the appellants in contempt, and *did not* even require them to show cause, his comments regarding the con-

In any event, the Court discerns no reason why Andriacco and Poley should fear filing a *proper* application to seal the records of Andriacco's federal conviction. In his ruling, the Magistrate Judge noted only that the Ohio General Assembly lacks the authority to order federal courts and federal agencies to seal *their own* records. (Doc. # 10 at 5). Indeed, the Magistrate Judge recognized the possibility that an Ohio court may possess the authority, consistent with the Supremacy Clause, to order state officials and agencies to seal state records of a defendant's federal conviction. (*Id.* at 5–6). In the present case, the Magistrate Judge found the expungement order objectionable only because it purported to require the federal courts and agencies to seal *their own* records of Andriacco's federal conviction, and because Andriacco sought the order just one month after his conviction, without giving notice to the federal prosecutor. In the future, if Andriacco provides the requisite notice to the federal prosecutor and applies for a state court order expunging his federal conviction *only from state court records*, the Court discerns nothing in the Magistrate Judge's Order that should cause him to fear a contempt citation.[5]

### III. *Conclusion*

Based upon the reasoning set forth above, the appeal by Defendant Frank Andriacco and attorney John Poley from the Magistrate Judge's Decision and Order sustaining their Motion to Dissolve a Show Cause Order is hereby dismissed for lack of jurisdiction.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

stitutionally of Ohio's expungement statute were neither actually litigated, nor necessary and essential to the dissolution Order. Accordingly, collateral estoppel will not preclude the appellants from addressing the statute's constitutionality in future litigation.

5. Ohio's state and federal courts have recognized that the Supremacy Clause does not prohibit a state court from ordering state agencies and officials to seal their records of a defendant's federal convictions. *See, e.g., State of Ohio ex rel. Gains v. Rossi*, 86 Ohio St.3d 620, 623–624, 716 N.E.2d 204, 208 (1999), quoting *Schwab v. Gallas* (N.D.Ohio 1989), 724 F.Supp. 509, 510 (" '[R.C.] 2953.32 cannot be construed as affecting federal records either maintained or in the custody of federal officers,' but '[w]hat the States do with their records and information received [from federal courts] concerns the States, not the federal courts.' "); *In re Application of Pacifico for Sealing of Records*, 129 Ohio App.3d 152, 717 N.E.2d 393 (2nd Dist. 1998) ("Although common pleas courts in this state are without jurisdiction or constitutional authority to order federal courts, agencies, or officials to seal federal conviction records, common pleas courts may, nevertheless, expunge federal conviction records maintained in Ohio by state officials or agencies, provided that the records are not maintained or utilized by those state officials or agencies pursuant to any federal law.").